.JAMES F. WINSTEAD and wife NICEY *v.* J. A. STANFIELD, Guardian
and others.

'When a guardian makes no effort to invest his ward's money at a profit, but
uses it in his own business, he converts it, and is liable for its value at the
time of the conversion. And having received Confederate money and bank
notes, he is liable for the value of the same at the date of receipt, the former
to be ascertained by the scale, and that of the latter upon evidence.

'The conversion by a guardian to his own use of bonds or notes belonging to his
ward, renders him liable for their actual value, not the value expressed on
the face of the same.

.Upon the marriage of a *feme* ward, compound interest ceases, and she has no
right to demand the same in a settlement with her guardian.

( *Wood* v. *Brownrigg,* 3 Dev. 430, cited and approved.)

CIVIL ACTION, tried at the Fall Term, 1872, of PERSON
Superior Court, before *Tourgee, J.*

The suit was brought on the guardian bond given by the
·defendant, J. A. Stanfield, and the other defendants, his
sureties, as guardian of the *feme* plaintiff, Nicey, wife of the
other plaintiff, James F. Winstead, and was tried below up-
·on exceptions filed by both parties to the report of the
referee. His Honor sustained the only exception of the
plaintiffs to the report which were not withdrawn, and
overruled those of the defendants. The defendants appealed.

The points presented, with the exceptions, and the evi-
dence pertinent thereto, are stated in the opinion of the
Court.

*W. A. Graham,* for appellants.
No counsel for plaintiffs in this Court.

RODMAN, J. We have to remark, that the questions which it was intended to present are no where stated clearly and precisely. There is no collected statement of the facts either by the referee or the Judge; and to ascertain what they were assumed to be, it is necessary to compare the evidence and the report of the referee.

It appears from the evidence of the guârdian himself, (which appears to be the only evidence bearing directly on the questions,) that on the 24th December, 1862, he received in Confederate money $1,000, and in notes on individuals $492.65. On 2nd November, 1863, he received $300 in Confederate money, and $228.66 in bank bills. On 1st January, 1864, he received $446.50, being negro hire, in Confederate money. One half of these sums belonged to his ward, the present *feme* plaintiff. He also received for his said ward, (when, does not appear,) $300 for equality of partition. In January, 1864, he sold $150 of the bank bills for $412.58 in Confederate money. On 22nd March, 1864, he invested $1,000 in a Confederate bond, in the name of his ward. The defendant further says that he did not keep the money of his ward separate from his own; and that he loaned out some of it in his own name, and used some of it in his own business. He does not state how much of it he so loaned or used, as he might have done, and consequently it must be presumed most strongly against him. On this state of facts, the principles to be applied are sufficiently clear.

1. When a guardian makes no effort to invest his ward's money at a profit for her, but uses it in his own business, he converts it, and is liable for its value at the time of the conversion. In this case the guardian is chargeable with the value of the Confederate and bank notes which he re-

ceived, at their value at the time of receipt; that of the former to be ascertained by the scale, and that of the latter upon evidence. As it does not appear that he made any effort to loan them out, the conversion must be taken to have been contemporaneous with the receipt. As to the sale of the $150 in bank bills, for $412.58 in Confederate money, nothing need be said, because he had previously converted the bank bills, and made them his own, whereby he became liable for their value. For the same reason he is not entitled to any credit for the $1,000 Confederate bond. After conversion, the fund was at his risk and he was absolutely responsible for its safety.

2. As to the individual notes received by him, it does not appear when, or under what circumstances he collected them. His liability in respect to them, depends on circumstances which do not appear.

When we turn to the account, we find the first charge to be for one-half of $1,503.77, received 24th December, 1862. Although these figures do not exactly correspond with the amount of Confederate money and individual notes which the defendant says he received on that day; yet, we suppose they were intended to include those two amounts, treating the individual notes as equal to Confederate money. The charge then would be $751.88, which the referee, as we suppose, reduced by the scale to gold, and then by adding 12½ *per cent.* for the depreciation of the present currency, made the amount $337.50. The plaintiff excepts to this method of treating it, and contends that the defendant is chargeable with the face value of the Confederate money and individual notes, instead of their actual value. His Honor sustained this exception, and after having modified the report accordingly, gave judgment for the plaintiff. As to the individual notes, we have stated above the rule applicable to them. As to the half of $1,000 received in Confederate money, we are somewhat at a loss as to the reason

of his Honor's ruling. We suppose it was because the guardian had converted the fund. But we find no authority that a conversion by a trustee can make him liable for anything more than the actual value; and it seems unreasonable that it should. The ward should be in no worse or better plight than if the guardian had performed his duty. If indeed the guardian had acted *mala fide* in receiving Confederate money from the executor, the question would be different, but there is no suggestion of that.

3. The defendants except that the ward was allowed compound interest after her marriage. The question is expressly decided in favor of the defendants in *Wood* v. *Brownrigg,* 3 Dev. 430.

The judgment below is reversed, and the case remanded for such further proceedings, &c. Let this opinion be certified. The defendant will recover costs in this Court.

PER CURIAM. Judgment reversed.