B. W. TAYLOR, Plaintiff in Error, *vs.* J. C. HITE, Curator, etc., Defendant in Error.

1. *Guardians—Measure of diligence required.*—A guardian is bound to use such diligence and prudence in the care and management of his trust fund, as in general men of discretion and intelligence employ in their own affairs. They are not liable beyond what they actually receive, except in case of gross negligence.

2. *Curator—Money owing estate, when should be collected—Sale of security at a sacrifice—Curator should be held, when.*—In the case of a curator, when money owing the estate is not required for the maintenance and education of the minor, he need not collect it unless the security is considered doubtful; and where land, considered at the time as ample security for the debt, is sold in the absence of such requirement, the circumstance is one tending to fasten upon the curator responsibility for the debt.

3. *Guardian—Liability for interest under statute of 1855—Written report unnecessary.*—Under the statutes of 1855, a guardian was not liable for interest which he had not received, and, upon reasonable diligence, could not obtain. He was not under that statute compelled, in order to relieve himself from liability, to file his sworn report that he could not obtain interest.

4. *Sale of land under mortgage—Deduction of part of the purchase money on ground of lack of title to part of the land.*—A guardian has no right to sell land under a mortgage, and at the same time rebate a portion of the purchase money on the ground that a part of the land, embraced in the mortgage, was not the property of the mortgagor.

*Error to Miller County Circuit Court.*

*Ewing & Smith,* for Plaintiff in Error.

*Wm. M. Lumpkin, with E. L. King,* for Defendant in Error.

NAPTON, Judge, delivered the opinion of the court.

This is an appeal from the settlement of a guardian and curator. In the circuit court the matter was referred, and the report of the referees was confirmed, except in a matter about which there is no dispute.

The principal objection to the report of the referees, and to the action of the circuit court in confirming it, is based on an allowance which the curator received for a loss in the collection of a sum of money belonging to his ward, which he had loaned out on a mortgage.

The facts appear to be about these : The father of the plaintiff died in 1855, leaving a considerable estate to be divided among his children, of whom three were minors. The defendant was appointed guardian of these minors and curator of their estates. In 1858 the defendant received from the administrator $800, which he immediately loaned to one Goff, and took a mortgage upon certain lands to secure it. In 1861, when the principal and interest on the note amounted to $1,067.40, he took a second mortgage, embracing twenty acres more than the first mortgage did, to secure the new note for principal and interest.

This last mortgage the defendant foreclosed in 1863, and the land brought at auction only $475, about one-third of the principal and interest then due on the note. The purchaser was subsequently allowed by the guardian a reduction of $100 on his bid, because one forty-acres had been inserted in the advertisement, which did not belong to the estate, and thus only $375 were realized from the mortgage to secure $1,067.40 and interest for ten years at 10 per cent. a year. A tract of forty acres disconnected with the main body of the land included in the mortgage was sold at the ensuing term of the court after the principal sale, and was bought by the defendant—the guardian—for $25. This land was afterwards sold by the defendant for $100. It was inferior in quality to the land bought by Babcoke, the purchaser at the sale.

The guardian put the money accruing from this sale, as he states in his testimony, " in a bottle and buried it." He did not lend it out, because it was difficult to lend money then, and various witnesses corroborated his opinion on this subject, that in 1863–'64 and 1865, it was difficult to loan money at interest.

There was evidence to show that the land sold to Babcoke, sold in 1865 for about $1,700.

The court refused to hold the guardian responsible for this loss upon the mortgage sale, and the propriety of this determination of the circuit court is the principal point arising in this case.

The duty of trustees in the discharge of their trusts may be considered as having been established by courts of equity with reasonable precision. Mr. Lewin, in his treatise on this subject, says, that the true rule is that a trustee is bound to exert precisely the same care and solicitude in behalf of his *cestui que trust*, as he would do for himself. This rule has, however, been questioned, for the reason that a man will sometimes engage in speculations, and may with propriety do so in regard to his own property, which courts of equity would not tolerate in a trustee.

But the rule, so far as this case requires its application, seems to be unexceptionable. All that the court requires, as was said in the case of Neff's appeal (57 Penn. St., 96), is common skill, common prudence and common caution. Executors, administrators and guardians are not liable beyond what they actually receive, unless in case of gross negligence. A trustee must use the same care for the safety of the trust fund, and for the interest of the *cestui que trust* that he uses for his own interests. He is bound to employ such diligence and such prudence in the care and management of a trust fund as in general prudent men of discretion and intelligence in such matters employ in their own like affairs.

There is plainly a difference in the duties of administrators and guardians arising out of the necessity imposed on executors or administrators to collect and settle up an estate within a time fixed by statute. There is no such necessity in the case of curators. If money is not required for the maintenance and education of the ward, it is unnecessary to collect it unless the security is considered as doubtful.

It is with reluctance that we have concluded in this case, that defendant should be held responsible for the debt of Goff secured by mortgage. There is no evidence to impeach the honesty of the guardian's course, but we are unable to see why the land mortgaged, conceded to have been an amply sufficient security for the debt, was forced into sale in 1863, when civil war was raging, and real estate was of course at the lowest figure. Conceding, however, that the curator

might have been justified in offering the land for sale in 1863, still, when the bids at the sale did not reach half the value of the land, why was not the sale stopped? Had the guardian been the mortgagee, to secure his own individual debt, would he have allowed such a sacrifice?

But what necessity was there for selling this land in 1863? It does not appear that any money was needed for the support or education of the minors. The curatorship continued for several years after, and we may infer that in 1863, there was no pressing necessity on the curator to raise money. Why sacrifice, then, a security deemed ample at the time it was given and considered ample at the time it was sacrificed?

It was conceded by the curator that the land was completely sacrificed, and in confirmation of the correctness of this opinion he bought himself forty acres at the price of $25, which he afterwards sold at $100. The proceeds of the sale he deposited in a bottle which he buried, which clearly shows that the money was not needed to support the ward, and which also shows that the land was a safer security than the money was, had it brought the full amount of the debt.

In England, courts of equity have a fixed rule which requires trustees to invest trust money in the 3 per cent. (government security), or upon mortgage of real estate. Our statute does not require the guardian to invest in government securities, nor until 1865 did it require an investment upon landed security; but the trustee here, as in England, is required to abstain from mere speculative investment, and to exercise ordinary prudence in selecting security. This was done in this case. The security was in land and amply sufficient, in the estimation of the guardian, and the principal was safe and in all probability the interest also, as a portion of the same land sold in 1865 for more than enough to have paid both principal and interest. The sacrifice of this security in 1863 seems unaccountable, assuming the trustee to have acted on the most ordinary prudential considerations. The fact that the mortgagor had left the State, which the curator alleges as a reason for pressing the collection, could not have been of

any importance whatever, unless the mortgagee considered the security insufficient, and the mortgagor had other property. But the mortgagee did not so consider, nor was there any evidence that the mortgagor had other means which he carried away with him; and if he had, how would a forced sale in 1863, at one-third of the debt, help the matter? The guardian attempts to justify the sale on the ground that he was apprehensive, as the mortgagor had left the State, that no more interest could be collected; but to save the interest, was it necessary to sacrifice one-half or two-thirds of the principal? And in fact, this motive could not have operated on the guardian, as he insists that money could not then be loaned at any per cent., and therefore put the proceeds of this sale and money of his own in a bottle and buried it in the ground.

Without exacting or requiring any extraordinary vigilance and prudence on the part of trustees in the management of a trust fund, we are compelled to say that the conduct of this guardian in converting a landed security, to all appearances amply sufficient, into a cash payment of one-third of the debt or thereabouts, which the guardian could not lend out at interest, and which for safety he was obliged to conceal, and which was not needed for the maintenance or education of his ward, cannot be sanctioned by a court of equity.

Some objections are made to the calculations of interest by the referees. The statute regulates this matter.

The defendant in this case did not make any written report to the Probate Court, but he verbally stated to the judge on several occasions during the years 1863–64 and 1865, that he was unable to loan out his ward's money then on hand. The probate judge testified to this and various witnesses clearly established that it was exceedingly difficult, if not impracticable, to loan money during these years.

The statute which regulated this subject at the time this defendant was acting as guardian is essentially different from the statute of 1865. Under this last statute the guardian was required to report to the Probate or other court having juris-

diction of probate matters, the fact that he was unable to loan out the money of his ward at interest; and this report had to be made in writing and attested by the oath of the guardian, and without such report he is held liable for interest. It is obvious that under the law the proof offered in this case from the probate judge, that verbal statements to him had been made, by the guardian, of the impracticability of lending the money of his ward in 1863, was inadmissible. But this guardian was governed by the code of 1855, which provides "that guardians and curators shall put the money of minors, entrusted to their care, to interest upon mortgage or other sufficient security, for all sums under $500, to be approved by the court, or they may retain the money in their hands, paying interest therefor; but if no person be found to take the money on interest, and the guardian or curator shall not choose to retain the same, paying interest, then they shall be liable for the principal only, until the same can be put to interest." It is further enacted that "guardians and curators shall loan the money of minors at the highest rate of legal interest that can be obtained, and shall account for all such interest received, which shall be charged in their annual settlements."

The two laws are essentially different. The last one holds the guardian responsible for interest, unless he relieves himself by a written statement to the court attested by his oath, and does not allow him to lend money on any other security than a landed one. The former law of 1855, gives him a discretion as to securities, and exempts him from liability to interest in cases where he does not choose to retain money for his own use, and where he cannot put out the money to other parties on interest. No particular mode of establishing this fact is required, as it is now.

Under the statute of 1855, and the evidence given in this case, we think the referees were fully authorized to exempt the defendant from liability for interest he had not received, and which, upon reasonable diligence, he shows he was not able to obtain.

In regard to the deduction of $100, which the guardian allowed the purchaser on account of one 40 acre tract sold, the

facts are somewhat obscure.   If this 40 acre tract was advertised, but not included in the mortgage, we see no reason why the guardian could not correct the mistake—but if this tract was included in the mortgage, it is clear that the guardian had no power to pass upon the title, and because of this opinion that the mortgagor's title was defective, to exempt the purchaser from the payment.   Whatever power the guardian may have possessed to have consented to a recision of the entire contract of sale, concerning which we give no opinion, he certainly exercised a very unsound discretion in allowing the purchaser to escape the payment for a portion of the tract and yet retain the remainder.   The guardian and purchaser had no power to determine upon titles of the mortgagor. But this question is immaterial in the view we have taken of this foreclosure.

The judgment is reversed and the case remanded.   The other judges concur; Judge Vories absent.