B. F. FINLEY, Guardian of Ida Potter, a minor, Respondent, v. ANDREW H. SCHLUETER, Appellant.

St. Louis Court of Appeals, May 30, 1893.

1. **Practice, Appellate:** APPEAL FROM FINAL SETTLEMENT OF THE GUARDIAN. The rules applicable to appeals in equitable actions will govern an appeal from the judgment on the final settlement of the guardian of a minor.

2. ————: REVIEW OF MATTERS OF FACT IN ACTIONS IN EQUITY. In chancery causes appellate courts are invested with full power to make their own findings of fact.

3. **Guardian and Ward:** NATURE OF THE GUARDIAN'S OBLIGATIONS. In the care and management of the ward's estate a guardian is bound to employ such diligence and prudence as in general prudent men of discretion and intelligence in such matters employ in their own like affairs; but, in the absence of gross negligence, a guardian is not liable for more than he actually receives.

*Appeal from the Cape Girardeau Circuit Court.*—HON. H. C. O'BRYAN, Judge.

REVERSED AND REMANDED *(nisi.)*

*W. H. Miller*, for appellant.

*J. W. Limbaugh*, for respondent.

BOND, J.—The appellant made his final settlement as guardian of Ida Potter in the probate court of Cape Girardeau county. Exceptions to this settlement were taken and filed by the respondent as the new guardian of said ward, which were overruled by the probate court, from which ruling an appeal was taken to the circuit court, where on a trial *de novo* judgment was rendered sustaining said exceptions, to-wit:

"In the Matter of the Final Settlement of Andrew H. Schlueter, Guardian of Ida Potter, a Minor. Appeal from Probate Court.

"Now come the parties herein by attorneys, and this cause coming on to be heard is taken up and submitted to the court, and by the court seen and heard. The court finds that the said Andrew H. Schlueter, guardian of Ida Potter, a minor, has failed to charge himself with and account to his said ward in his final settlement for the sum of $157.20, being one half of $56.40, unpaid rent of land for the year 1889; one half of $95, unpaid rent of land for year 1891; one half of $63, unpaid claim against G. W. Carlton, and $50, amount overpaid on claim of John Mogler. It is thereupon ordered and adjudged that said final settlement as stated by the said Andrew H. Schlueter be disallowed, and his said settlement be and is disapproved; and it is further ordered and adjudged that said account be stated as follows:

Finley v. Schlueter.

### DR.

| | | |
|---|---|---|
| To one half of $56.40, unpaid rent of land for the year 1889 .... | .$ 28 | 20 |
| To one half of $95, unpaid rent of land for the year 1891 ........ | 47 | 50 |
| To one half of $63, unpaid claim against G. W. Carlton ...... .... | 31 | 50 |
| To amount overpaid on claim of John Mogler ..... .. ......... | 50 | 00 |
| November 15, 1890—To amount due ward on settlement ......... | 311 | 93 |
| August 15, 1891—To amount interest on $200 for nine months..... | 11 | 97 |
| August 15, 1891—To one half cash on rent...... ............... | 13 | 00 |
| August 15, 1891—To one half wheat taken on rent............ .. | 19 | 68 |

$513 78

### CR.

| | | |
|---|---|---|
| By one half paid for rails—21........ ............$ | 8 | 62 |
| By one half paid for taxes—22................. ... | 2 | 32 |
| By one half paid on attorney's fee—23... ........... | 5 | 00 |
| By one half cost in suit for rent v. Geo Carlton et al. before H. C. Hinton—24.......... ........... | 2 | 45 |
| By one half cost paid in attachment suit against Noah Noland—25................................. | 3 | 85 |
| By two per cent. commission—26 .................. | 7 | 31 |
| By extra services rendered by guardian in looking after repairs on farm... .................. .. | 10 | 00 |
| By probate fees—27............................ | 4 | 05 |
| By amount paid John Mogler, caring for, board, etc., of ward—28. .. ........................... | 70 | 30 |
| By amount paid successor......... ..... ......... | 225 | 00 |
| By balance..................... .... ........· .... .. | 174 | 87 1-2 |

$513 78 1-2

To balance due ward........ ..................    $174 87 1-2

"Which sum of $174.87 1-2 the court finds is a balance due the said minor on final settlement. And it is further ordered and adjudged that the said Andrew H. Schlueter pay over to the present and acting guardian of said minor the balance found due on final settlement, together with the costs in this behalf expended, and that a certified copy of this judgment, together with the original papers, be transmitted to the probate court of this county."

On appeal from this judgment the appellant assigns for error: *First.* The action of the circuit court in charging the guardian over and beyond the charges

approved by the probate court.  *Second.* The overruling of his motion for new trial.

It has been held by this court that the trial of objections to items of final settlement of administrators must be had without the intervention of a jury, and that, in reviewing such causes, the rules applicable to appeals in equitable actions will govern. *In re Estate of Meeker*, 45 Mo. App. 186. If that rule is to be applied to the conduct of administrations, we perceive no valid reason why it should not govern a trial of objections to the final settlement of a guardian. In chancery causes, appellate courts are invested with full power to make their own findings, and the statement of some of the decisions that they will defer somewhat to the findings of the chancellor only means "that, when there is a conflict of testimony, or where the testimony is evenly balanced, and the finding of the chancellor appears to be correct," then it will be sanctioned by the appellate tribunals. *Benne v. Schnecko*, 100 Mo. 250, 258; *McElroy v. Maxwell*, 101 Mo. 294, 308.

In this state the liability of guardians is regulated by the principle applicable to the relations of trustee and *cestui que trust*. Guardians are therefore bound to employ in the care and management of the ward's estate "such diligence and such prudence     *     *     * as in general prudent men of discretion and intelligence in such matters employ in their own like affairs." They are not, however, liable beyond what they actually receive, unless in case of gross negligence. *Taylor v. Hite, Curator*, 61 Mo. 142, 144. The case at bar must be determined in accordance with the foregoing principles.

The first assignment of error as to failure to give the appellant credit for $19.68, being one half of amount paid on account of growing wheat taken for part of rent, is well taken. Although the prior settlement of

the appellant in the probate court contained this item of charge against himself as guardian, yet the uncontradicted testimony on the trial in the circuit court tended to prove that the wheat, for which this was the assumed value, was turned over to a renter named French, who paid it to the respondent as the successor in guardianship to appellant. The circuit court, therefore, should have embraced this $19.68 among the credits allowed on re-stating the account.

The second assignment of error is the charge against the appellant of $31.50, *i. e.*, one half of unpaid claim of G. L. Carlton. The testimony discloses that this was an unpaid balance of a note given by Carlton, Bright & McDill; that two of the parties had about paid what they estimated to be the proportion of the note due from them, and one of them (Carlton) testifies he tried to get the guardian to sue on this note in 1889, when the other maker had a good wheat crop out of which it could have been made; that the guardian "did not do it and did not want to do it," and never brought suit until 1891. We think this evidence tended to show gross negligence on the part of the guardian in failing to sue on the note when requested so to do by one of its makers and at a time when there was a probability of its collection, which justified the action of the circuit court in charging the guardian with the unpaid balance of said note.

The third assignment of error questions the propriety of the claim against the appellant for one half of the rent for the year 1889. The evidence shows that the total rent due for that year was $160, of which $78 were collected in money and allowances to the tenant for work, and a mortgage taken to secure the remainder, $82. This mortgage embraced two horses and a cow. Twenty-six dollars were collected under this

mortgage, leaving $56 uncollected. The testimony of
Carlton on this point is as follows:

"*Q.* Do you remember of Nolan offering to turn
over any corn to Schlueter for the rent of the second
year? *A.* Yes, sir.

"*Q.* How much? *A.* I do not know; it was sup-
posed to be between seven hundred and eight hundred
bushels.

"*Q.* Did Schlueter accept it? *A.* Yes, sir; he
turned it over to me. I was his agent. He told me to
sell it and send him the money, and he told Nolan
before he left—I heard it—he told Nolan, if he could
sell it for the money to pay the rent, to do so. I con-
sidered it taken out of my hands then, and did not look
after it as close as I would.

"*Q.* Do you know what Nolan did with the corn?
*A.* No, sir."

It is fairly inferable from this testimony that the
guardian had the means of making the debt due him
under the mortgage for rent of 1889, and that he vol-
untarily surrendered to the debtor the right to dispose of
the property turned over for the payment of the rent.
This was inexcusable negligence under the circum-
stances, and in the light of his previous experience of
the disposition of the debtor to avoid the payment of
rent due for former years, we think the trial court com-
mitted no error in making this charge against the guard-
ian.

The fourth assignment of error challenges the
charge against the guardian for one half of the unpaid
rent for the year 1891. The evidence is that the guard-
ian a third time rented the place to the same tenant,
Nolan, for $150. The guardian failed to collect $95 of
this rent. On this point the agent employed by the
guardian testified, to-wit:

"*Q*. What crops did Nolan have on the place at the time of the lawsuit for $150 rent? *A*. A crop of wheat and corn.

"*Q*. How much corn at that time? *A*. He made a right smart of corn, but on the trial day he did not have it.

"*Q*. Do you know how much he made. *A*. No, sir.

"*Q*. About how much? *A*. About eight hundred bushels.

"*Q*. Was there enough corn to secure $150. *A*. Yes, sir.

"*Q*. What did he do with the corn? *A*. He hauled it off and sold it; he hauled it to Kogler's; I could not give the dates that he hauled it, but at early corn gathering time. Schlueter had told me to not let him haul it, unless he was hauling it off to pay the rent. I did not know until it was pretty near all hauled. I told him that he must pay the rent. He said that is what he was hauling it for; when he got the money he would settle the rent. Schlueter told me, if he hauled the corn to pay the rent, to let him haul it."

We think this testimony fairly shows that, except for the positive instructions of the guardian, the agent Carlton could have taken steps to secure the rent for that year, and that the circuit court committed no error in holding the guardian responsible for a loss superinduced by his instructions to his agent.

The last assignment of error is directed at the charge of $50 for overpayment made by the guardian to one Mogler. The evidence shows that the ward was placed with the family of Mogler to be treated as one of them until she became of age (eighteen years), without charge for her maintenance; that her guardian had paid for clothes while she was at Mogler's; that he has not paid the $50 for board for which he now asks

credit, and is not to pay it unless allowed on his settlement.

We are not disposed to revise the action of the circuit court in disallowing this credit. There was no proof of any express contract whereby the ward was to pay for her board otherwise than by rendering services. If there was no intention of a charge being made for board when the ward was taken to Mogler's, it is clear that it could not be insisted thereafter. *State v. Slevin*, 93 Mo. 253. If, on the other hand, in the absence of an express contract a charge was made by Mogler on an implied agreement, we do not think the evidence adduced justified its allowance in the form of a credit to the guardian.

The first assignment of error sustained in this opinion will necessitate a reversal of this cause, unless the respondent will within ten days remit that amount ($19.68) from the recovery before the circuit court, in which event the judgment of that court for the residue will be affirmed and the costs of this appeal taxed against respondent; otherwise the judgment will be reversed, and the cause remanded. It is so ordered. Judge BIGGS concurs. Judge ROMBAUER is absent.