## SYLVESTER HENNIES, a Minor, by S. J. SALFEN, Curator, Respondent, v. ORA A. KEITHLY, Appellant.

**St. Louis Court of Appeals. Opinion Filed November 6, 1923.**

1. **GUARDIAN AND WARD: Curators: Trust Estates: Degree of Diligence Required.** A curator who keeps the estate separate from his own funds, and preserves its character and identity as a trust estate, is only required to exercise that degree of diligence in the care and administration of the estate as reasonably prudent men are wont to exercise in the care and management of their own like business affairs.

2. ———: ———: ———: **Curator Not Permitted to Assume Equivocal Attitude.** A curator is not permitted to assume an uncertain or equivocal attitude in relation to the trust estate, so that he may shift his position whenever in the eventualities of time it may become advantageous to him to do so.

3. ———: ———: ———: **Curator Investing Or Depositing Trust Funds in Individual Name: Personal Liability.** A curator who converts the trust estate to his own use, employs it in his own private concerns, or commingles it with his own estate, so that it loses its character and identity as a trust estate, will be held to a strict accountability in the event of loss, and where he lends the funds of his ward and takes the notes payable to himself individually, or invests them in securities in his individual name, he cannot be admitted to show upon failure of the debtor or the loss of the securities that the notes taken or the securities purchased belong to the ward's estate and thus escape personal liability for the loss, regardless of the motive for which the funds were so invested or deposited.

4. ———: ———: ———: **Converted: Curator Using Trust Funds in His Personal Affairs: Bonds Subscribed for and Purchased in Own Name: Kept in Safety Deposit Box: Burglarized: Liability.** A curator who subscribed for and purchased Government bonds in his own name, with his own funds, after having used the trust funds of his ward in his own private affairs for a period of more than five years, without in any way indicating the purchase of the bonds in his settlement, or filing a report thereof in his annual settlement as required by section 414, Revised Statutes 1919, showing he had invested the funds of his ward in Government bonds,

213 M. A.—34

*held* not to have so unequivocally designated or impressed the bonds as trust property that he may, after a safe deposit box containing the bonds had been burglarized and the bonds stolen, and the loss occurred, be permitted to say they belonged to his ward, and thus escape personal liability for the loss, notwithstanding a memorandum on the envelope containing the bonds recited that the bonds belonged to his ward, and he had clipped from said bonds the interest coupons and deposited same in the bank to his account as curator.

Appeal from the Circuit Court of St. Charles County.—
*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*C. W. Wilson* for appellant.

(1) 1. There is no statutory requirement that a curator, or like fiduciary, should be charged with the highest legal rate of interest with annual rests. Sec. 414, R. S. 1919, does not so provide. Payne v. King, 38 Mo. 502. 2. The rule allowing them to be so charged is founded upon no statute, but is rested upon the rules established in equity procedure when calling to account recalcitrant trustees in general. The rule of *compensation* is the established rule, in this State, that is to be applied in such cases. The beneficiaries are entitled to the rate at which the fund could have been kept safely invested. Cruce v. Cruce, 81 Mo. 676; In re Final Settlement of Tyler, 40 Mo. App. 378; Bobb v. Bobb, 89 Mo. 421; Albert v. Sanford, 201 Mo. 134. 3. It was manifestly wrong to charge this curator with interest on the $1,000 invested in bonds from the date the bonds were stolen, February 17, 1920, to April 11, 1922, a period of two years and two months at six per cent or any other rate, the bonds having been stolen and thus lost without fault on the part of the curator. State ex rel. v. Meagher, 44 Mo. 356; Fudge v. Durn, 51 Mo. 266; Powell v. Hurt, 108 Mo. 507, 513; Booster v. Armstrong, 93 Mo. 49. (2) 1. The curator was au-

thorized by express statute to invest the ward's money in United States government bonds. R. S. 1919, sec. 414. 2. While it is true that on May 9, 1919, the date on which the curator subscribed for the bonds, the law had not gone into effect, the Legislature had passed the law and had finally adjourned. The Fiftieth General Assembly adjourned on May 8, 1919. Laws of Mo., 1919, page 767. The law went into effect ninety days after the adjournment or on August 6, 1919. The bonds were not delivered until about the middle of August, 1919, so that the law was in full effect when the curator received the bonds and placed them in the safe deposit box in the bank vault with the envelopes containing them, marked as the property of the ward. The curator was expressly authorized to invest the ward's funds in such bonds. R. S. 1919, sec. 419; Laws Mo., 1919, page 107. 3. Having invested the ward's means in securities as he was authorized to by express statute, he may not be charged with negligence because he made such investment of the funds. 4. The degree of care required of the curator was that degree of care which men of prudence ordinarily exercise in the conduct of their own affairs. When the curator put his ward's means in these bonds and placed the bonds for safe-keeping in a safe deposit box in a well-constructed bank vault, where he kept all his own securities, and where the business men in general in his community kept their like securities, made the investment in the kind of securities and placed them for safekeeping in the same kind of depository, that business men all over the United States were doing with their own means, he cannot be justly charged with negligence in so doing, and cannot equitably be held responsible for the amount of the stolen bonds. State ex rel. v. Meagher, 44 Mo. 356; Fudge v. Durn, 51 Mo. 264; Powell v. Hurt, 108 Mo. 507; Booker v. Armstrong, 93 Mo. 49.

*Emil P. Rosenberger* for respondent.

(1)   The curator mixed and mingled the ward's money with his own, and loaned the money out on real estate security and realized eight per cent interest. Therefore, the curator should have been chargeable with eight per cent compound interest, and was not entitled to any credit for any services he rendered. State ex rel. Pyles v. Richardson, 29 Mo. App. 595; State to the use of Collins v. Gilmore, et al., 50 Mo. App., 353.    (2) The curator having failed to comply with section 444, R. S. 1919, must therefore be charged with the highest legal rate of interest. State ex rel. Deckard v. Macom, 186 S. W. 1157; Richardson v. Allen, 185 S. W. 252.    (3) A curator is bound to exercise the same measure of prudence and diligence in the care and management of his ward's estate that a prudent and diligent man would exercise in the care and management of his own business. Finley v. Schlueter, 54 Mo. App., 455; Taylor v. Kellog, 103 Mo. 258, 77 S. W. 130; Taylor v. Heidt, 61 Mo. 142.    (4)   Prior to August 7, 1919, a guardian or curator under the laws of this State was not authorized or empowered to invest his ward's funds in government bonds.   The curator was not authorized by statute to invest the money of his wards in the bonds at the time he alleges he made the investment, and the alleged investment as made by the curator was made at his risk.

SUTTON, C.—This action arises on exceptions to the final settlement of defendant, Ora A. Keithley, retiring curator of the estate of Sylvester Hennies, a minor. Defendant was appointed as curator of said estate and also of the estate of Ralph Hennies in 1913. He received as such curator $1879.68. All of this amount except a few small items was derived from the sale of real estate in a partition suit brought by the curator on behalf of his wards. The funds so received were deposited by defendant in the Bank of O'Fallon in his name as curator of said estates. The deposit was made on November 1, 1913. On December 8, 1913, the defendant as curator checked out of the bank his wards' balance, which constituted the entire assets of their es-

tates, and applied it to the payment of his own individual note owing by him to the bank. Defendant at the time he checked the funds out of the bank made and signed a memorandum on a slip of paper in the nature of a due-bill, reciting that he owed his wards the amount checked out and that it should bear interest at the rate of four per cent per annum, and placed the memorandum in the bank book kept by him as curator.

Defendant made his annual settlements of the estates of his wards jointly. He made his first annual settlement February 20, 1914. This settlement showed a cash balance in his hands of $1872.48; his second annual settlement made February 9, 1916, showed a balance of $2012.40; his third annual settlement made February 16, 1917, showed a balance of $2079.10; his fourth annual settlement made May 14, 1919, showed a balance of $2215.42. In his second settlement defendant charged himself with interest on $1872.48 for two years at the rate of four per cent compound interest; in his third settlement he charged himself with interest on $2012.40 for one year at the rate of four per cent; in his fourth settlement he charged himself with interest on $2079.10 for two years at the rate of four per cent compound interest. The settlements do not show from what source the interest was derived, nor do they show how the wards' funds were invested or the disposition made by him of such funds, nor was any report made to the court showing such facts. Defendant at the time he checked out his wards' funds and applied them to the payment of his own indebtedness, was loaning his own money to the amount of about ten thousand dollars on real estate security in the State of Oklahoma for which he obtained eight per cent interest per annum. He testified that he was unable to loan the trust funds in the neighborhood where he resided on prime real estate security; that there was no demand for such loans; and that for this reason he used the trust funds in his own business, accounting for four per cent interest per annum thereon.

The application of the trust fund by the defendant

to the payment of his own debt left his own loans in Oklahoma undisturbed, and he continued to keep his own funds at interest in Oklahoma so far as he was able to do so, making the loans and taking notes and deeds of trust therefor in his own name. All of his funds were not loaned out at all times. He usually had a small balance in the bank where his funds were deposited in his own name. In 1919 defendant's deposits accumulated in the bank until on May 9, 1919, his balance had grown to $4,949.58. On the last named date he subscribed for two Victory Loan Coupon Bonds of the denomination of $1,000 and two Victory Loan Coupon Bonds of the denomination of $100, and checked on his said bank account for $2,200 in payment for said bonds. He subscribed for these bonds in his individual name and not as curator. He testified, however, that he purchased the bonds for his wards; that he received the bonds about the middle of August; that when he received them he made a memorandum on the envelope containing the bonds, reciting that "the within bonds belong to Ralph and Sylvester Hennies," and placed the bonds enclosed in said envelope in his individual safety deposit box with his own private papers and securities in the vault of the Bank of O'Fallon. To the box defendant alone had access. There was a steel cabinet or nest of deposit boxes in the vault and defendant's deposit box was in this cabinet or nest. On December 17, 1919, defendant clipped from said bonds the interest coupons then due, amounting to $59.70, and deposited the same in said bank to his account as curator of Ralph and Sylvester Hennies.

On the night of February 16, 1920, the vault of the bank was burglarized. The outer door of the bank was pried open by the burglars with a crowbar, the combination lock of the vault door was blown off with dynamite, the lock of the inner door was punched out, and the deposit boxes were sledged and jimmied, and the contents thereof stolen by the burglars. And defendant testified that the bonds in question together with the

envelope in which they were enclosed were thus stolen from his deposit box and that they were entirely lost.

On February 14, 1921, the defendant resigned as curator and Sebastian J. Salfen was appointed as his successor.

On March 25, 1921, defendant filed and submitted in the probate court his final settlement of the estate of plaintiff, Sylvester Hennies. In this settlement defendant charged himself with $1107.71, being one-half the amount due the estates of both wards as shown by the annual settlement made May 14, 1919, with $5 cash received from the Hennies estate, and with $29.85 interest on Victory Loan Bonds, and took credit with $9.87 expended for taxes, with $4.70 for probate clerk's fees, and with $1100 for Victory Loan Bonds alleged to have been stolen by burglars, showing a balance due the estate of $27.99.

Thereupon plaintiff filed exceptions to the settlement asking that the credit of $1100 for the loss of Liberty Bonds be disallowed and that compound interest be charged against the defendant upon the trust funds from November 21, 1912, at the rate of eight per cent per annum.

Upon a trial anew in the circuit court on appeal, the court charged the defendant with all the funds received by him except the interest on the coupon bonds, and charged him with simple interest on the funds in his hands from December 8, 1913, at the rate of six per cent per annum, allowed him credit for his expenditures and a commission of five per cent on the total assets in his hands, but disallowed the credit of $1100 taken by defendant in his final settlement for the loss of coupon bonds, and found and adjudged a balance due the estate by the defendant in the sum of $1263.69. From this judgment defendant appealed.

The question for decision here is whether or not the defendant is entitled to credit for the Victory Bonds alleged to have been burglariously stolen. We have not found just this case in any of the books. The general

rules, however, relating to the duties and liabilities of a curator in the administration of the estate intrusted to him are well settled.

It is well settled that if the curator keeps the estate separate from his own funds and preserves its character and identity as a trust estate, he is only required to exercise that degree of diligence in the care and administration of the estate as reasonably prudent men are wont to exercise in the care and management of their own like business affairs. [Taylor v. Hite, 61 Mo. 142, l. c. 144; Finley v. Schlueter, 54 Mo. App. 455, l. c. 458; Taylor v. Kellogg, 103 Mo. App. 258, 77 S. W. 130; State ex rel. Townshend v. Meagher, 44 Mo. 356, l. c. 362; Fudge v. Durn, 51 Mo. 264; Booker v. Armstrong, 93 Mo. 49, l. c. 59, 4 S. W. 727; Powell v. Hurt, 108 Mo. 507, l. c. 513, 17 S. W. 985.]

It is equally well settled that if the curator converts the trust estate to his own use, employs it in his own private concerns, or commingles it with his own estate, so that it loses its character and identity as a trust estate, he will be held to a strict accountability in the event of loss. If he invests or loans the funds of the estate, or deposits them in a bank, in his individual name, he thereby converts them to his own use, and in so doing commits a breach of trust, and is personally liable in case of loss. If he deposits the trust funds in a bank he must make the deposit as of trust funds and not as his own, or he will not be protected from loss by failure of the bank. The deposit must wear the impress of the trust or he cannot when brought to account call it trust property. So, too, if he lends the funds of his ward and takes a note payable to himself individually, or invests them in securities in his individual name, he cannot be admitted to show upon the failure of the debtor or the loss of the securities that the note taken or the securities purchased belong to the ward's estate and thus escape personal liability for the loss. In such case the good faith or intention of the curator is a matter of no concern. If he invests or deposits the trust funds

in his own name without in some way designating the funds as trust property, he will be personally responsible for any loss that may occur, regardless of the motive for which the funds were so invested or deposited. The curator is not permitted to assume an uncertain or equivocal attitude in relation to the trust estate, so that he may shift his position whenever in the eventualities of time it may become advantageous to him to do so. [McAllister v. Commonwealth, 30 Pa. St. 536, l. c. 538; White v. Parker, 8 Barb. 48, l. c. 53; O'Connor v. Decker, 95 Wisc. 202, l. c. 204; Winstead v. Stanfield, 68 N. C. 40; Naltner v. Dolan, 108 Ind. 500, l. c. 503; White v. Sherman, 168 Ill. 589, l. c. 603; De Jarnette v. De Jarnette, 41 Ala. 708, l. c. 710; Knowlton v. Bradley, 17 N. H. 458, l. c. 460; In re Bane, 120 Cal. 533; Morris v. Wallace, 3 Pa. St. 319; State to use of Koch v. Roeper, 82 Mo. 57, l. c. 64; Berry v. Berry, 218 S. W. (Mo. App.) 691, l. c. 692.]

The rule is cogently stated by Justice PORTER in McAllister v. Commonwealth, supra, thus:

"If a trustee undertake to make a deposit in a banking institution, the entry must go down on the books of the institution, in such terms as not to be misunderstood, that they are the funds of the specific trust to which they belong. He cannot so enter them as to call them his own to-day, if they are good, and to-morrow, if bad, ascribe them to the estate; or shift them in an emergency from one estate to another; or, by the deposit, secure the discount of his own note, and have the deposit snatched at by the bank if the note be not paid, or attached by a creditor as the depositor's individual property. . . . The trustee who desires to keep out of harm's way himself, and to keep others out, has, therefore, a plain track before him."

So, in Naltner v. Dolan, supra, the rule is stated and reasoned in this wise:

"Having put the owner of the fund to the hazard of losing it, or of maintaining its trust character by such proof *aliunde* as may be available to him, the trus-

tee thereby gives the former the privilege of treating the latter as his debtor, or of supplying the proof, or accepting his admission of the facts, at his option.

". . . The controlling consideration is, that it was deposited to the credit of the firm, without anything to designate or preserve its trust character. They took and retained the legal title to the deposit in themselves. In the event of a controversy, the character of the fund would have depended wholly on extraneous proof. This being so, the owner had the right to elect to stand upon the title to the deposit, as he found it. Having so elected, there is no rule of law which authorizes any inquiry into the motives for so taking the title, short of an express or implied direction from the owner of the fund."

And in State to use of Koch v. Roeper, supra, our own Supreme Court, speaking through Commissioner MARTIN, said:

"When a trustee makes an investment in his private capacity and fails to indicate promptly that his investment is on account of the estate he has in charge, he thereby subjects himself to well grounded suspicions of maladministration, upon coming and claiming it to have been on account of the estate after loss or depreciation of the security taken by him."

The rule thus announced is applied generally to the administration of all classes of trust estates; it ought to be applied with unrelenting vigor where the estates of infants are involved.

The rule announced in Powell v. Hurt, supra, that a trustee acting in good faith is treated with tenderness and favoritism in case of loss, has no application where the trustee converts the trust estate and devotes it to his own private use.

In the case before us the defendant converted the trust funds to his own use and devoted them sedulously to his own private concerns. He obliterated the character and identity of the trust estate as far as it was possible for him to do so. He deliberately abandoned

his character as trustee of the estate and assumed the relationship of debtor thereto. However well intentioned the conversion and use of the trust estate may have been, it was a *legal* wrong and a breach of trust. On May 9, 1919, after having used the trust funds in his own private affairs for a period of more than five years, defendant purchased the Victory Bonds in question. He did not purchase the bonds with his ward's money; he purchased them with his own funds, checking on his own individual bank account in payment. He subscribed for the bonds in his individual name and not in his name as curator or in the name of his ward. He claims now that he purchased the bonds for his ward, but there was nothing in the transaction to indicate this. The intention on the part of the defendant to use his own funds to purchase these bonds for his ward was not in any way manifested in the purchase; nor was such intention manifested by any unequivocal overt act on the part of the defendant at any time prior to the loss of the bonds. A few days after the defendant purchased the bonds and paid the purchase price therefor, he filed his fourth annual settlement in the probate court. He did not in any way indicate the purchase of these bonds in this settlement, neither did he file a report with the settlement showing he had invested the funds of his ward in government bonds, though section 444, Revised Statutes 1909 (section 414, R. S. 1919) expressly required him to make report at every annual settlement of the disposition made by him of the funds belonging to his ward. If it was his intention in subscribing for the bonds and paying the purchase price therefor out of his own funds to set apart the funds so paid as trust funds to purchase bonds for his ward, it would have been an easy matter for him to have unequivocally manifested such intention by mere compliance with the plain mandates of the statute.

Defendant's learned counsel contends, however, that the indorsement by defendant on the envelope containing the bonds of the memorandum reciting that the bonds

belonged to his ward and the deposit of the interest coupons to his account as curator in the bank, was a sufficient designation of the bonds as trust property. Though there is plausibility in this contention, we think it is not well founded. The indorsement amounted to nothing more than an unexpressed and undisclosed intention. It did not describe the bonds; it was not signed by the defendant; and it did not leave his possession. It could have been easily separated from the bonds and destroyed, either intentionally or otherwise, without knowledge of its existence by any person other than defendant. The deposit of the interest on the bonds to defendant's account as curator was not sufficient to impress the bonds with the character of trust property. Such deposit was effectual only to impress the interest deposited, not the bonds, with the trust. The deposit of the interest thus made by defendant was in no sense inconsistent with his individual ownership of the bonds. The defendant was indebted to the trust estate, and the deposit might very well have been explained as setting apart so much of his own funds in payment so far of such indebtedness to the estate.

We think it is clear that there was no such unequivocal designation or impression of the bonds as trust property, that the defendant may now, after the loss has occurred, be permitted to say they belonged to his ward, and thus escape personal liability for the loss. If defendant had kept the trust estate intact, had preserved its trust character and identity, and had purchased the bonds with the trust funds, a very different case would be presented for decision; but, having converted the trust estate to his own private use destroying its character and identity as a trust estate, he cannot afterwards re-impress it as trust property by purchasing securities in his own name with his own funds, without a designation of such securities as trust property in some definite overt manner, amounting, at least, to something more than a mere unexpressed intention or undisclosed mental attitude.

The Comissioner, therefore, recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.