In Re the ESTATE of Edna G. ZEPPEN-
FELD, Incompetent.

Patrick M. FIANDACA, III, Successor
Guardian of the Person and Estate of
Edna G. Zeppenfeld, Incompetent, Peti-
tioner-Appellant,

v.

Sheldon D. GRAND, Administrator Cum
Testamento Annexo of the Estate of
Robert E. Murray, Deceased, and Fi-
delity and Deposit Company of Mary-
land, Respondents.

No. 40856.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 26, 1979.

Edward L. Thomeczek, Clayton, for appellant.

Sheldon D. Grand, Clayton, for Fidelity and Deposit Co. of Md.

Barnard & Baer; John E. Heater, St. Louis, for respondent.

PER CURIAM.

This is an action by the public administrator of St. Louis County (Petitioner) against the estate and on the bond of Robert E. Murray, former guardian of Edna Zeppenfeld.

Mrs. Zeppenfeld was adjudicated incompetent sometime during the first six months of 1972. Mr. Murray, now deceased, was appointed guardian of her estate, one of the primary assets of which was her residence. Annual settlements filed by Mr. Murray in 1973 and 1974 were subsequently disapproved by the probate court, and Mr. Murray was ordered removed as guardian in July or August of 1975, at which time petitioner was appointed to replace him. In September, 1975, petitioner filed his "Petition to Determine Liability of Defaulting Guardian" seeking to recover certain peculia of the incompetent that had originally been inventoried but were unaccounted for by Mr. Murray at the time the estate was turned over to petitioner. Petitioner also sought to recover damages allegedly occasioned the estate by virtue of certain omissions by Mr. Murray in discharging the duties of guardian, as well as the fees and costs incurred in pursuing the estate's claims against Mr. Murray. Mr. Murray died during the pendency of the probate proceedings, and respondent Grand, administrator *cum testamento annexo* of Mr. Murray's estate, was substituted for Murray.

Petitioner obtained judgment in probate court for slightly more than $23,000 against both Murray's estate and respondent surety, Fidelity and Deposit Company of Maryland. Included in that judgment was the sum of $21,000 as compensation for amounts lost through the failure to rent and the depreciation of the residence owned by Mrs. Zeppenfeld.

Grand and Fidelity appealed to the circuit court where the matter was tried *de novo*. At trial, Grand confessed judgment as to approximately $1,000, that being the value of those assets inventoried but later unaccounted for by Murray. Petitioner acknowledged that all other assets had been turned over to him, and the trial proceeded principally on the issues of Mr. Murray's liability for failing to realize rental income on the residence during his stewardship and for allowing that property to deteriorate and fall into a state of disrepair. Petitioner also presented evidence of his fees and costs in pursuing the rights of the estate. At the close of all the evidence, the trial court granted Grand's motion in the nature of a motion for directed verdict as to all claims other than that confessed by him, and judgment was entered for petitioner in the amount confessed.

Petitioner contends on appeal that the trial court erred in finding that there was no proof that Murray was culpably responsible either for failure to rent the residence or for allowing it to deteriorate, and that it was also error to deny his claim for attorney's fees inasmuch as that expenditure

was necessitated by Murray's breach of his duties as guardian.

The record discloses that at the time of her adjudication Mrs. Zeppenfeld abided in and owned certain residential property located in St. Louis County. Evidence was presented indicating the market value of the residence at the time of the adjudication and at the time petitioner was appointed, as well as its rental value at various times during Murray's tenure. It also appeared that a son of Mrs. Zeppenfeld either resided with her at the time of her adjudication or occupied the residence at some time thereafter. No evidence was adduced to show specifically when the son resided in the house or when the incompetent was removed therefrom, although there was some indication that she may have been placed in a nursing home prior to petitioner's appointment as guardian. The residence was unoccupied at the time petitioner assumed the duties of guardian and had at that time suffered some deterioration due to lack of maintenance. Petitioner's evidence consisted primarily of testimony by certain realtors and appraisers as to the "before" and "after" condition of the residence and tending to establish both the fact and amount of depreciation. No direct evidence of actual or specific acts or omissions by Mr. Murray causing or contributing to the deterioration was presented.

After entering findings as to the market value, amount of depreciation and the rental value of the property, the court concluded in its order granting Grand's and Fidelity's motion for judgment that "there was no credible evidence as to what portion, if any, of the depreciated condition was due to the negligence, misfeasance, or malfeasance, of Robert E. Murray; nor was there any evidence as to any acts or failures to act by said Robert E. Murray which caused a depreciation in value or damage to the property." The court also found that "no sum is allowable to petitioner in this proceeding to reimburse the estate the value of said [legal] services, just as same would not be allowable in a negligence action," and ultimately concluded "[t]hat other than as set out herein, the petitioner has failed of proof of acts or omissions imposing liability on respondent or his predecessory [sic] and has failed of proof of damages."

In his first point, petitioner argues that the failure of Mr. Murray to realize any rental income on incompetent's residence during his tenure as guardian constitutes a breach of the "standard of care imposed upon a guardian." Consequently, his argument continues, it was error not to find Grand, as Murray's administrator c.t.a., and Fidelity liable for the lost rentals.

The inescapable implication of this argument when viewed in light of the record before us is that a guardian is absolutely liable for any unrealized rental income that could conceivably have been generated by realty under his auspices, or, at the very least, that a mere showing of non-rental of estate assets alone somehow shifts to the guardian the burden of disproving actionable culpability in not renting the property. Neither alternative accurately reflects the state of the law on this issue.

In support of the proposition that the guardian is strictly liable for unrealized rental income, petitioner cites *In re Final Settlement of Tyler*, 40 Mo.App. 378 (1890). In *Tyler*, however, a guardian had occupied certain realty owned in part by her ward, without having paid the ward's estate any sums for the benefit thus realized. The guardian was held accountable for the ward's share of the reasonable rental value of the property thus occupied. There is no suggestion in *Tyler* that the guardian is to be held strictly liable for unrealized rents where the property in question was not occupied by him or any other party, and there is no suggestion in the instant case that Mr. Murray realized any personal benefit from the use of estate assets for which the estate was not compensated. The other case cited by petitioner in support of the same proposition, *Buie's Estate v. White*, 94 Mo.App. 367, 68 S.W. 101 (1902), merely holds that, under the guardian's duty to make the estate productive, he should be reimbursed for repair expenses incurred in rendering estate property rentable.

While it is undoubtedly true that a guardian is under some obligation to take reasonable steps to make guardianship estates productive, we find nothing in the

authorities cited by petitioner, including § 475.130.2, RSMo 1969[1] (requiring the guardian to "take possession of all . . . rents, income, issue and profits"), rendering a guardian strictly liable upon a mere showing that estate assets were not rented, or shifting the burden of disproving culpability to him upon the same showing.

■ The standard against which the actions of the guardian are to be judged is that of "good faith" and "due care and diligence in the management of his ward's estate." *Mills v. Smith*, 92 S.W.2d 939, 943 (Mo.App.1936). The practical import of this is to require the guardian "to exercise that degree of diligence in the care and administration of the estate as reasonably prudent men are wont to exercise in the care and management of their own like business affairs." *Hennies v. Keithley*, 213 Mo.App. 529, 255 S.W. 940, 941 (1923).[2]

■ The record in this case contains some testimony as to the rental value of the residence at various times and also indicates no rents were ever received. The testimony as to rental value apparently assumes a renovated or non-depreciated condition of the residence. No evidence appears as to whether Mr. Murray as guardian ever attempted to rent it or whether the rental market at the time was such as would have made its rental possible or probable. There is no indication as to when the premises were vacated either by Mrs. Zeppenfeld or her son nor does it appear when the premises fell into a state of disrepair. In short, on this record the trial court could do no more than speculate as to the cause of the non-rental of the premises as well as the amount that might have been realized assuming that rental was feasible. The evidence presented does not rise to the level of proof of a breach by Mr. Murray of his duty of good faith or reasonable diligence and care. Inasmuch as the judgment is not unsupported by or against the weight of the evidence in this regard, we decline to disturb it. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

In his next point, petitioner adverts to the trial court's finding that no evidence was presented of acts or omissions by Mr. Murray causing the depreciation of the residence and objects to its consequent denial of liability therefor. In an argument osculant to that raised under his first point, petitioner in effect contends that his proof that depreciation occurred during Mr. Murray's tenure should alone warrant an assessment of liability against him. Again, this is tantamount to imposition of strict liability without regard for causation of or culpability for the loss complained of, or at the very least to a shifting of the burden of proof to the guardian. Such is not the law.

■ In the ordinary action for damages, the plaintiff has the burden of proving a submissible case by adducing substantial evidence of probative value or by inferences reasonably drawn therefrom. *Mills v. Keith Marsh Chevrolet Inc.*, 549 S.W.2d 604, 607 (Mo.App.1977). The concept of a "submissible case" contemplates the establishment of each element of a cause of action by such evidence or inference, and a total failure of proof as to any one element of the cause of action constitutes a missing link breaking the chain of facts, the completion of which is necessary to an assessment of liability. *Graham v. Conner*, 412 S.W.2d 193 (Mo.App.1967). One crucial link in that chain is a showing that the defendant breached some duty owed the plaintiff through some act or omission proximately causing the injury complained of. *Graham*, 412 S.W.2d at 202–203. There has been no suggestion or authority presented that a damage action against a guardian or on his bond lies outside the operation of these

---

1. Now § 475.130.2, RSMo 1978.

2. This latter guideline should not, however, be read as authorizing speculation with a ward's funds such as a fiduciary might indulge in with his own assets. See comments and cases cited at 5 Mo. Practice, A. Maus-Probate Law and Practice § 1920 (1960).

*See also: Dubail v. Green Trails Plaza, Inc.*, 587 S.W.2d 934 (Mo.App.1979), noting that the duty of a trustee in administering a trust is to exercise the same care as a prudent person in the handling of his own property.

fundamental principles; nor could there be. It is axiomatic that a guardian is not an insurer of the ward's estate. *See*: 39 C.J.S. Guardian and Ward § 70 (1976). It is incumbent on petitioner here to demonstrate some breach of duty owed the ward resulting in the loss complained of. The mere fact that depreciation occurred is not directly probative of a breach, nor may such an inference be reasonably drawn in the ordinary case from the same naked fact. Petitioner did not make a submissible case on this issue, and the trial court did not err in granting Grand's and Fidelity's motion in the nature of motion for a directed verdict.

■ Our conclusion in this regard is not altered by the fact that Mr. Murray failed to obtain an order of the probate court authorizing the retention of the realty. Petitioner argues that this omission constitutes a breach of the guardian's duty to "perform all other duties required of him by law" in the administration of the estate, § 475.130.1, RSMo 1969.[3] One such duty "required of him by law" but violated here, petitioner continues, is the securing of a probate court order authorizing the retention of realty as an asset of the estate. Petitioner claims such an order is implicitly required by § 475.165, RSMo 1969.[4]

We need not decide whether the cited statute in fact requires the guardian to obtain such an order. Even assuming that an authorization order is required, there is no demonstrable causative connection between this "omission" and the loss complained of. The net effect in the instant case of the obtaining of an order would have been that the eventual loss through depreciation would have had the imprimatur of the probate court. Even if we assume the probate court would have denied such requested authorization at some point during the administration of the estate, because there was no evidence of when the depreciation accrued it would still be impossible now to do any more than speculate as to whether the loss, or any part of it, could thereby have been averted.

Finally, petitioner complains that the trial court erred in failing to award him the reasonable value of this legal services expended in pursuing the putative rights of the estate against respondents. Petitioner cites *State ex rel. Patterson v. Tittmann,* 134 Mo. 162, 35 S.W. 579 (1896), as the sole authority for the unique theory that his attorney's fees are recoverable. In *Patterson,* the former ward had prevailed in an earlier suit to clear his title to certain realty which the deceased guardian had wrongfully encumbered with a personal debt during his guardianship. In the subsequent suit for damages on the guardian's bond, the court authorized recovery of attorney's fees incurred by the ward *in the prior suit,* as the earlier suit was the "natural and proximate consequence" of the guardian's defalcation and as the surety acceded to and approved the employment of counsel by the ward in pursuing the earlier action. Further, the earlier action benefited the surety by minimizing the damages for which the surety would then be liable in the present action on the bond. *Patterson* does not hold that the ward's attorney's fees in the reported action on the bond were recoverable *in that same action.* On all the foregoing bases, *Patterson* is distinguishable from this case.

■ Our statement in *Williams v. Gulf Coast Collection Agency Co.,* 493 S.W.2d 367, 370 (Mo.App.1973), that "ordinarily attorney's fees cannot be recovered as damages in the absence of statutory authority or a contract provision" expresses the current law on this subject. As neither statutory authority nor a contractual provision authorizing such recovery exists here, the trial court did not err in refusing petitioner's request for reimbursement for his services.[5] Furthermore, assuming arguendo that attorney's fees would be recoverable

---

3. Now § 475.130.1, RSMo 1978.

4. Now § 475.165, RSMo 1978.

5. *But see: W. B. M. v. G. G. M.,* 579 S.W.2d 659 (Mo.App.1979), and *Stegemann v. Frank,* 571 S.W.2d 697 (Mo.App.1978), authorizing attorney's fees in paternity suit without statutory authority under inherent power of the court to care for a minor child.

895

under the postulation that action against Mr. Murray was necessitated by reason of his failure to make a proper accounting, there is nothing by which to gauge the amount of fees. The record is destitute of any time spent or fees attributable to the services rendered in connection with the accounting litigation. We will not speculate as to how the total amount of time should be allocated to the accounting action. Thus, no basis exists on the record for an award of any particular amount of attorney's fees, and the trial court did not abuse its discretion in refusing to allow them.[6]

Judgment affirmed.

All Judges concur.

---

6. *But see: LoPiccolo v. LoPiccolo*, 581 S.W.2d 421 (Mo.App.1979), regarding trial court's need for evidence on the issue of attorney's fees.