LUEDKE, et al., Respondents, v. CARLSON, Appellant

(41 N. W.2d 552)

(File No. 9115. Opinion filed February 27, 1950)

**Stordahl, May & Boe**, Sioux Falls, for Plaintiffs and Respondents.

**Bailey, Voorhees, Woods & Fuller** and **M. T. Woods**, Sioux Falls, for Defendant and Appellant.

HAYES, P.J.   Defendant appeals from a judgment permanently enjoining him from constructing and operating upon his property, Block 5 of Park Ridge Addition to Sioux Falls, a motel or motor court.   Suit for an injunction promptly followed plaintiffs' learning of the proposed project and defendant's commencing work preparatory to the erection of eight structures each with four rooms.   Each building, except one planned for an office and two lodging rooms, is designed to provide lodging for eight persons. No question has arisen here respecting the location, size or exterior architectural design or type of construction of the buildings defendant proposes to erect upon his premises. The sole question is whether restrictive covenants prohibit the use of defendant's property as a motor court.

Park Ridge Addition is an area four blocks square and embraces about forty acres.   The same is divided into ten blocks of irregular shapes and varying sizes.   Blocks 5 and 6 thereof include about one-fifth of the area in the addition and contain that part of the addition bounded on the west by Western Avenue.   Immediately to the west of Western Avenue is the property of the Veterans Administration, in part occupied by a veterans' hospital and facilities.   Block 5 lies north of Block 6, the latter being the smaller of the two.

The restrictive covenants imposed upon the addition in effect provide that all lots therein, with the exception of Blocks 5 and 6, shall be used exclusively for residence purposes.   Block 6 is set apart for commercial uses.   With regard to Block 5 the declaration of restrictions and covenants provides that said block may be designated and used for multiple residence purposes under "Class M-R-1 Zoning Use Purposes" as provided by ordinances of the City of Sioux Falls then in force and effect.   Zoning ordinance number 15.105 of said city then provided: "M-R-1 use shall include every use as an apartment house, boarding house, flat, family hotel, hotel, or lodging house".   It is agreed that this ordinance provision became applicable to Block 5 prior to the construction work begun thereon by defendant.   Before commencing the work defendant had applied for and received permits for the construction of eight lodging houses.

Common to each section of the addition the restrictive covenants, in general terms, inhibit offensive trades and activities and declare against a nuisance or annoyance to the neighborhood. Dance and pool halls and liquor stores are specifically excluded by covenants made applicable to Block 6, the commercial area. With respect to the section of the addition exclusively residential and to Block 5 these covenants expressly prohibit the use of a trailer, basement, tent, shack, garage, outbuilding or temporary structure as a place of residence, either temporarily or permanently.

By a memo filed at the trial of the action plaintiffs' counsel stated his theory of the case and the contentions he would urge. The trial court was thereby in substance advised that an injunction was sought upon the grounds that the applicable ordinance does not permit use of the proposed structures as a motor court and that such a use of the defendant's property is excluded by the restrictive covenant against annoyances "if such use would be an annoyance to the neighborhood". Adopting plaintiffs' interpretation and application of the ordinance and viewing the testimony of plaintiffs' witnesses as sufficient to establish that the proposed motor court would be or become an annoyance and nuisance to the neighborhood the trial court entered judgment for plaintiffs and enjoined the project.

■■■ We consider first the wording of the zoning ordinance. Defendant asserts that his proposed structures are lodging houses as defined by Ordinance 15.102(q) which reads: "A lodging house is a dwelling other than a hotel in which lodging is provided for eight or more persons for compensation." As above noted, M-R-1 use expressly includes lodging houses. Counsel are in apparent agreement with the rule, widely adhered to, requiring that zoning ordinances and restrictive covenants be strictly construed in favor of the free use of property. We perceive here, however, no call for other than a common interpretation of the term "lodging house" as that term is defined by the zoning ordinance. We find in the zoning ordinance, or in the restrictive covenants applicable to Block 5, no reference to either a motel, motor court or the like and nothing to support the view that a group of lodging houses intended to

accommodate the motoring public would constitute an unauthorized use of the property in that block. Enlarging the ordinance or restrictive covenants so as to inhibit such use of lodging houses is a function not resting with the courts. We deem it our province only to determine the character of the proposed buildings and the right of defendant to use the same for the intended purpose. Our views are that at least seven of the buildings included in defendant's plans are to be lodging houses within the definition quoted above, and within the common meaning of the term used, and that the building permits authorizing the construction thereof correctly characterized seven of the proposed structures.

In reaching a decision that defendant's contemplated use of his property would constitute an annoyance and nuisance in the neighborhood the learned trial court evidently relied upon the testimony of parties and witnesses, a considerable number of whom do not reside or own property in Park Ridge Addition, to the effect that a motorists' lodge or court in Block 5 would lessen the value of property in the addition and elsewhere; that noises and movements of the transient or traveling public in and about the proposed project would be disturbing, and that women and children in the area would not enjoy as much freedom as is common to residential sections. Before making an evaluation of this testimony, we think it should here be pointed out that nothing in the record before us invites the suggestion that defendant plans to construct and maintain other than a modern, first-class and well-equipped group of lodging houses or that defendant intends to operate and manage the same in a manner out of keeping with the nature and character of this project or contrary to the orderly maintenance of accommodations of the type planned.

Conceding that the objections and opinions voiced by plaintiffs and their witnesses against defendant's proposal are not without some degree of merit, but also recognizing that events of the future will disclose the kind and character of the lodging house business to be conducted upon the property in question, we are nevertheless confined to that which is open to proof and which now lies before us. We decline to assume that defendant now has in mind

to and will so manage his lodging houses or motor court, if he should choose to call them the latter, in such a manner as will degrade and classify the same as disorderly and unfit, and therefore an annoyance to the neighborhood. What we can see now repels such an assumption. Should future events bring into being that which is disallowed by the restrictive covenants the parties aggrieved thereby will not be without recourse to prevent violation of those covenants.

Bearing it in mind that the ordinance referred to in the covenants designates Block 5 as a multiple residence section of Park Ridge Addition and that the construction of lodging houses in that block is expressly authorized, it necessarily follows that the character of the particular area was fixed at the outset and prior to the acquisition of homesites by plaintiffs, the Luedkes, and other persons now owning property lying in the section of the addition strictly residential. These owners acquired their homesites in this addition aware of the covenants and ordinances applicable to Block 5 and with knowledge of the right of the owner or owners of said block to erect and operate within the area of that block apartment houses, boarding houses, flats, family hotels, hotels and lodging houses in such number of one or more of the included uses as that block would accommodate. Conceivably, a block of ground 718 feet long and of an average width of about 240 feet, the approximate dimensions of Block 5, will accommodate a good many multiple residences of the type and kind declared to be proper structures for that block. Of this also were purchasers of lots elsewhere in the addition bound to take cognizance when they bought their lots. But ordinary reflection on their part would then have made clear to the minds of these purchasers the likelihood that sooner or later the owner or owners of Block 5 would seek to enjoy the use of the area in that block in keeping with the covenants and ordinances particularly applicable thereto.

If this reasoning is sound, and we think it is, it then must follow also that the parties who now oppose defendant's plans cannot be heard to urge objections which are more or less common to homeowners as they look upon an area in close proximity to their homes wherein structures

other then private dwellings either are not disallowed or are expressly permitted by the terms of the covenants binding equally upon all who occupy the addition. Catering to the public, with the majority of people moving about in motor vehicles, must have been fully contemplated at the outset and when the covenants were imposed upon Block 5. If what are but incidental and essential to an authorized use of property are severed therefrom the use is then without value and the property right is destroyed.

■■ As noted above, expressly excluded from the addition are trailers, tents, shacks and the like for use as living quarters. That a modern and first-class motorists' lodge is not within the excluded structures is strikingly clear. Such a lodge, properly conducted and enjoying the patronage of motorists seeking the convenience and comforts to be had thereat, may be found to be less objectionable to occupants of the residential area than might be other structures permitted in Block 5. Prophetic observations are not helpful. The plaintiffs have, however, but predicted that when completed and in operation defendant's project will likely become a nuisance and annoyance. Testimony of this character was not sufficient to warrant the issuance of the injunction granted by the trial court. Cases in point are collected in the footnotes to §§ 151 and 152, 39 Am.Jur., Nuisances.

■ Plaintiffs argue for an affirmance of the judgment upon the principle of equitable estoppel. The application of this principle against defendant's proposed project was not sought in the proceedings before the trial court. Plaintiffs' pleadings, trial memo and proposed decision include no suggestion that the doctrine of equitable estoppel was or ought to be regarded as an element of the case with which to reckon. We decline, therefore, to discuss this proposition.

The judgment is reversed, all judges concurring.