CITY OF SIOUX FALLS, Appellant v. CLEVELAND et al., Respondents

(70 N. W.2d 62)

(File No. 9445. Opinion filed April 30, 1955)

**Robert S. Golden, John E. Burke, Thomas J. Barron,** Sioux Falls, for Plaintiff-Appellant.

**Hitchcock, Nichol & Lassegard,** Mitchell, **Francis G. Dunn,** Sioux Falls, for Defendants-Respondents.

SMITH, J. This action was brought by the city of Sioux Falls under SDC 45.2614 to restrain the maintenance and use of two trailer houses on a described lot on the theory that such use is proscribed by its zoning ordinance. The trial court predicated its judgment dismissing the complaint of the city on two grounds. First, it concluded the use revealed by the evidence is not prohibited by the zoning ordinance because of an existing and continuing use of the premises for that purpose prior to and since the effective date of that ordinance. Second, interpreting the zoning ordinance as forcing those who, through choice or necessity, make their homes in trailer houses to live in trailer or tourist camps located in the commercial and industrial districts of the city, the court concluded that, as applied to the defendants Gulberg, Palmer and their families, its provisions were arbitrary, discriminatory and unreasonable, and hence in contravention of the due process and equal protection provisions of the constitutions of the United States and South Dakota. By its appeal the city seeks a review of these legal conclusions of the trial court.

In 1943 Sioux Falls enacted a comprehensive zoning ordinance pursuant to SDC 45.26 Mary Cleveland, defendant above named, owns two lots located in what was designated as a Class R residence district by the provisions of that ordinance. Her home is located on one of her lots. Continuously since 1949 she has permitted others to occupy her adjoining lot with trailer houses for a monthly rental. In 1950 Sioux Falls adopted its present revised comprehensive zoning ordinance which placed Mrs. Cleveland's lots in a single family residence district. As interpreted by the city this ordinance excludes defendants' trailers from such a single family residence district. In August 1950 when the present ordinance became effective, and continuously since that time Mrs. Cleveland has had two trailer house tenants on her adjoining lot. The defendant Gulberg and his fam-

ily, consisting of a wife and three children, have lived in their modern trailer home since 1951. The defendant Palmer, his wife and daughter have lived there in a trailer house since 1953. The city notified the defendants to discontinue the use in July 1954. They failed and refused to comply, and this action was instituted.

In McQuillin on Municipal Corporations, 3d Ed., Vol. 8, § 25.181, it is written:

> "Generally speaking, a nonconforming use existing at the time a zoning ordinance goes into effect cannot be prohibited or restricted by statute or ordinance, where it is a lawful business or use of property and it not a public nuisance or harmful in any way to the public health, safety, morals or welfare. In other words, a zoning ordinance is invalid and unreasonable where it attempts to exclude and prohibit existing and established uses or businesses that are not nuisances. If when a zoning ordinance was adopted, premises were used for a nonconforming use, one is within his rights in continuing that use. Accordingly, zoning regulations cannot be made retroactive and neither can prior nonconforming uses be removed nor existing conditions be affected thereby."

See Des Jardin v. Town of Greenfield, 262 Wis. 43, 53 N.W.2d 784.

The foregoing statement of principle is conceded by the city as elementary, and it does not contend that the defendants are maintaining a nuisance. Its position is that the described use of the lot in question was not a legal use of the premises when the 1950 ordinance became effective because it was not permitted by the 1943 ordinance. Therefore, in reviewing the first conclusion of law of the trial court, we must determine whether the maintenance of trailer homes on Mrs. Cleveland's adjoining lot was permissible under the 1943 ordinance.

The 1943 ordinance provides in substance that no building or premises shall be used for any purpose other than that permitted by its provisions in the use district in which the building or premises is located.

It divides the city into five classes of use districts as follows:

1. R—residential districts;
2. M-R—multiple residence districts;
3. C—commercial districts;
4. M—manufacturing districts; and
5. S-M—special manufacturing districts.

Other of its provisions limit the uses permitted in portions of the residential districts through subclassification into R-1, R-2 and R-3 uses. Mrs. Cleveland's property is located in what the ordinance classified as R-1 territory. The applicable use provision reads "R-1 use shall include every use as a dwelling house, double house, or duplex house."

The ordinance defines a "dwelling house" as "a building used or intended to be used as a home or residence in which all living rooms are accessible, without using an entrance vestibule, stairway, or hallway that is designed as a common entrance vestibule, stairway, or hallway for more than one family, and in which the use and management of all sleeping quarters, all appliances for cooking, ventilating, heating, or lighting other than a public or community service, are under one control."

It also defines a "building" as "a structure entirely separated from any other structure by space or by a wall or walls in which there are no communicating doors or windows or similar openings."

After careful consideration of these provisions the trial court observed: "Placing a fair construction on the zoning law of 1943, the court is of the opinion that a trailer home, like the trailers of the defendants Gullberg and Palmer, is a single family dwelling, and as such is permitted on Mrs. Cleveland's lot under the 1943 ordinance."

■ Our function in placing an interpretation on this ordinance is to discover and declare the intention of the legislative body by which it was enacted. Sejnoha v. Buchanan, 71 S.D. 220, 23 N.W.2d 142, and 62 C.J.S., Municipal Corporations § 442, p. 841.

Read in a literal sense the words employed by the legislative body of the city in the 1943 ordinance comprehend the

use of a trailer as a dwelling house use. In common usage the word "structure" describes "something constructed or built." Webster's International Dictionary, 2d Ed. Hence, in an accepted sense, a trailer house is a structure. As it is separated from other structures by space, it is such a structure as is described by the terms of the definition of a "building" we have quoted from the ordinance. Obviously, these trailer houses measure up to every detail of the above quoted definition of a "dwelling house," and their use is a dwelling house use within the letter of the ordinance.

However, if we accept the fact that such a meaning can be read from the words of these controlling provisions, because it is quite apparent from reading the ordinance as a whole that those who enacted the measure were principally concerned with uses of land and its permanent improvements, doubt remains whether they actually had trailer houses in contemplation when they said "R-1 use shall include **every use as a dwelling house,** double house, or duplex house." With that doubt in mind we return to a view of the ordinance as a whole.

As we have indicated the ordinance is permissive in design, that is to say, it restricts uses of premises and buildings by describing the uses permitted in each class of districts.

The words "trailer house" do not appear in the ordinance. Therefore unless the position be taken that the ordinance reveals a legislative intention to completely exclude from the city the use of a trailer house as a dwelling, permission for such use must be spelled out of the provisions we have quoted, upon which the trial court rested its conclusion, or from some other provision of the enactment.

Even if the court had assumed that an absolute exclusion of trailer house dwelling uses from the entire city was within its legislative competency, we think the court would not have been warranted in reading such an extreme intention from this ordinance. Counsel for the city do not advocate such an interpretation. They take the view that Mrs. Cleveland was operating what they denominate as a "tourist court" and, with the aid of the holding of the Louisiana court in City of New Orleans v. Louviere, La.App., 52 So.2d

751, they point to certain catch-all provisions of this ordinance dealing with the C-commercial-districts, and contend that such activities are permitted only in such districts.

The provisions, upon which this contention rests, read, with emphasis supplied, as follows:

"In a Class C district every use as a Class R use, Class M-R use, and every **other use not classified as a Class M use or Class S-M use** shall be permitted except as herein otherwise provided" and "A Class C commercial use shall include **all commercial activities and uses not otherwise classified herein,** provided all materials and products except as otherwise herein provided are stored and any processing operations as to the same are carried on entirely within substantial buildings completely enclosed with walls and roof, and provided no operations are of such a nature as to become offensive or noxious by reason of the emission of odors, fumes, gases, dust, smoke, noise, or vibrations."

The term "commercial", in its broad sense comprehends all business, while in a narrow sense it includes only those enterprises engaged in buying and selling of goods and services. United States v. Public Service Co. of Colorado, 10 Cir., 143 F.2d 79, and Mechanical Farm Equipment Distributors, Inc., v. Porter, 9 Cir., 156 F.2d 296.

Predicated on the broadest connotation of the word "commercial" it could be said that as Mrs. Cleveland was renting her lot for revenue, she was engaged in a commercial activity. However, by a parity of reasoning, Mrs. Cleveland would have been engaged in a commercial activity if she had erected a double house or a duplex house on her lot for rental purposes. Because the ordinance provides that "R-1 use shall include **every use** as a dwelling house, double house, or duplex house", the interpretation for which the city contends seems dubious.

As we have indicated, in determining and declaring the legislative intention revealed by this ordinance the trial court was confronted by two questions, viz., (1) Was a trailer

house use an R-1 dwelling use? (2) Were Mrs. Cleveland's activities in renting her adjoining lot to the other two defendants on a monthly basis a commercial use within the quoted provisions? Convincing answer to neither of these questions emerges from the most careful study of the ordinances as a whole. The trial court therefore resolved its doubts in favor of the free use of property.

In Luedke v. Carlson, 73 S.D. 240, 41 N.W.2d 552, we adverted to a principle which is formulated in Monument Garage Corp., v. Levy, 266 N.Y. 339, 194 N.E. 848, 850, as follows: "The zoning ordinance is in derogation of common-law rights to the use of private property. Its provisions should not be extended by implication." For the same reason, we are of the view that well-founded doubts as to the meaning of obscure provisions of a zoning ordinance should be resolved in favor of the free use of property. Therefore, we hold the trial court did not err in concluding the use which Mrs. Cleveland has made of her property since 1949 was lawful under the 1943 ordinance and hence was not prohibited by the 1950 ordinance.

It follows, we think, that the use of her tenants is also lawful. To restrain them would be to deprive her of the right to make a lawful use of her property.

The foregoing holding impels an affirmance of the trial court's judgment of dismissal. Therefore, we need not, and indeed, we should not, pass on the contitutional questions involved in a review of the above-mentioned second conclusion of the court. State v. Snyder, 74 S.D. 14, 48 N.W.2d 238; Haas v. Independent School Dist. No. 1 of Yankton, 69 S.D. 303, 9 N.W.2d 707; Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438; 16 C.J.S., Constitutional Law, § 94, p. 208; and 11 Am.Jur.Constitutional Law § 93.

The judgment of the trial court is affirmed.

All the Judges concur.