James B. PIECHOWSKI et al., Plaintiffs and Respondents,

v.

Earl D. CASE et al., Defendants and Appellants.

No. 12013.

Supreme Court of South Dakota.

Argued March 21, 1977.

Decided June 17, 1977.

John T. Porter, of Doyle & Bierle, Yankton, for plaintiffs and respondents.

Larry F. Hosmer, of Hosmer & Cody, Yankton, for defendants and appellants.

PORTER, Justice.

This case involves a restrictive covenant which is a part of a residential subdivision plat. To resolve the case we must interpret the covenant to determine whether certain uses now projected for the "Park and Commercial Area" of the plat by appellant subdividers violate the covenant and may be enjoined by respondents who are homeowners within the platted subdivision. We affirm the judgment granting respondents a permanent injunction.

In 1963 appellants[1] platted "Riverside Acres" as a residential subdivision, with six blocks containing a total of ninety-six lots, and a "Park and Commercial Area" [see Appendix A]. The subdivision is located about six miles from the City of Yankton, and is bounded on the south by the Missouri River. Appellants executed and made a part of the plat "Declarations of Restrictions and Covenants to Run with the Land" [hereafter Declarations] [see Appendix B]. The Plat and Declarations were recorded in the Yankton County register of deeds office June 11, 1963.

Appellants have been selling lots in Riverside Acres since 1963. Since 1974 they have been constructing homes on unsold lots, then selling the developed lots. Respondents comprise approximately one-half of the homeowners in the subdivision.

The Declarations were amended in 1965 and again in 1967. Each time, the amendments were executed by all of the then lot owners, and by appellants, and were recorded in the Yankton County register of deeds office. The 1965 amendment changed Block 4 from mobile home or house trailers to single family residences. The 1967 amendment changed Block 5 from "construction and rental of cabins and /or motor courts" to single family residences, and further provided that the restrictions applicable to Blocks 4 and 5 should henceforth be identical to the restrictions applying to Blocks 1, 2, 3 and 6 as set out in the original

Declarations [Appendix B]. The specific provisions in the original Declarations relating to the "Park and Commercial Area" were unchanged by the 1965 and 1967 amendments. Although appellants still hold some lots for sale, all of the lots sold have been developed by the buyers in compliance with the Declarations, as amended. There is nothing in the record to indicate that any lot in Blocks 1 through 6 has been used other than for construction of a single private dwelling designed for and occupied by one family, as a residence.

In March, 1976 appellants replatted the "Park and Commercial Area", subdividing it into fourteen building lots and a lot "A" designated as a Park. As platted in 1963 the "Park and Commercial Area" is approximately twelve acres. The replatted Park (Lot A) is approximately two and one-fourth acres. No part of Lot A adjoins the Missouri River. That part of the "Park and Commercial Area" of the original plat which adjoins the river is replatted into building lots.

Appellants presented the replat to the county commissioners of Yankton County for approval and at the same time announced that they planned to sell the fourteen building lots as sites for four-unit apartments, duplexes, and some single family residences. Shortly thereafter respondents brought this suit and on July 12, 1976 the trial court entered the judgment from which this appeal is taken. The judgment, in pertinent part, enjoins appellants from "utilizing the Park and Commercial Area of Riverside Acres of Yankton County, South Dakota, for any purpose other than as a public park with concession type businesses thereon to serve the park users * * *." When the judgment was entered the "Park and Commercial Area" on the Riverside Acres Plat [Appendix A] was completely unimproved, contained a natural growth of trees, and was owned by appellants.

1. Appellants Case are the original subdividers of "Riverside Acres". Under a contract for deed dated February 23, 1974, the Cases are selling their interest in Riverside Acres to appellants Mayer. Since all have the same rights and obligations in this cause, only the term "appellants" will be used, whether reference is to the Cases, the Mayers, or both.

The Declarations [Appendix B] contain the following provisions expressly applicable to the "Park and Commercial Area":

"1. The area designated as Park and Commercial Area is to be used as a public park and for concession type commercial units. Space for said commercial units to be subject to either lease or sale."

Appellants main argument for reversal is that the Declarations are ambiguous as they pertain to the use of the Park and Commercial Area, particularly because the term "concession type commercial units" has no "clear and unequivocal, ordinary or popular meaning." They contend that the ambiguity should be resolved in favor of their right to the free use of their own property.[2]

This case does not require that we determine and catalogue all possible uses *permitted* within the Park Area by the term "concession type commercial units." Such a pronouncement would be dictum. It is enough that we decide whether appellants' projected uses are *not* permitted. The alleged ambiguity is relevant only as it pertains to the precise fact issue before us, which is, may appellants subdivide the "Park and Commercial Area" and sell fourteen lots therein as sites for duplexes, four-unit apartments, and single family residences.

"Language is ambiguous when it is reasonably capable of being understood in more than one sense." *Newton v. Erickson,* 73 S.D. 228, 41 N.W.2d 545 (1950). Can the Declarations be reasonably understood as permitting appellants' projected use? In answering this question we consider the Declarations in their entirety, rather than just one part or provision. "A contract should be considered as a whole and all of its parts and provisions will be examined to determine the meaning of any part." *Eberle v. McKeown,* 83 S.D. 345, 159 N.W.2d 391 (1968).[3] To ascertain the intent and purpose of appellant subdividers, we look to the language which they employed in drafting the Declarations in 1963. It is clearly expressed that the restrictive covenants [Declarations] are adopted "[A]s a general plan for the benefit of said tract" [Riverside Acres]. With the amendments of 1965 and 1967, each lot in the ninety-six lot subdivision is limited to single family residence.

Do the plat and Declarations show an intent by the subdividers that the "Park and Commercial Area" be an integral element of the comprehensive development scheme for Riverside Acres? As platted, the Park area adjoins the Missouri River. The subdivision is six miles from Yankton. A potential buyer of a lot in Riverside Acres could reasonably observe that the Park area is included as a part of the plat, that specific covenants as to the Park area are included in the Declarations which set out the complete development plan for "Riverside Acres," and that the Park area not only provides convenient access to the river along a platted street but also provides a recreational area of many potential uses in this eventual ninety-six home community.

It is reasonable to view the inclusion of the Park area by the subdividers as an added inducement to favorably influence potential lot purchasers. Each owner bought with notice of and was entitled to rely upon the material in the plat and Declarations. Private rights have arisen.[4] Each lot purchaser in Riverside Acres accepted his lot burdened with all of the restrictions which made up the comprehensive development plan. At the same time the lot purchaser was entitled to enjoy as a benefit to his own lot the imposition of the same restrictions upon all the other property in the plat to the end that the subdivi-

2. We regard as dicta only, our statement in *Luedke v. Carlson,* 73 S.D. 240, 243, 41 N.W.2d 552, 554 (1950) that restrictive covenants [imposed upon a residential subdivision] are to be strictly construed in favor of the free use of property.

3. And see *Hall v. Church of Open Bible,* 4 Wis.2d 246, 249, 89 N.W.2d 798, 800 (1958).

4. See *Leverton v. Laird,* 190 N.W.2d 427, 434 (Iowa 1971).

sion would be developed according to the comprehensive development plan included by reference in the subdividers deed to each lot purchaser. We conclude that the "Park and Commercial Area" is an integral part of the "general plan for the benefit of said tract" set forth in the Declarations.

The Declarations concerning the "Park and Commercial Area" provide:

> "The area designated as Park and Commercial Area is to be used as a public park and for concession type commercial units. Space for said commercial units to be subject to either lease or sale."

The term "Park and Commercial Area" is qualified by this special clause chosen by the subdividers to define the permitted use of the park area. "The area * * * is to be used as a public park and for concession type commercial units. * * *"

We construe the specific restriction concerning the "Park and Commercial Area" in the light of the general plan for Riverside Acres. *Tabern v. Gates,* 231 Mich. 581, 204 N.W. 698 (1925). Moreover, we regard the real purpose of restrictive covenants contained in a residential subdivision plat as "the protection of property values in the subdivision so as to increase the desirability of these lots as residences through the existence of such restrictions." *Thodos v. Shirk,* 248 Iowa 172, 79 N.W.2d 733 (1956).

To allow four-unit apartments and duplexes in the Park would change the uniform single residence plan of the development. To allow residential use of any kind on eighty per cent of the Park would materially interfere with respondent homeowners' permitted use. Additionally, since the projected fourteen building sites utilize all of the area adjacent to the river, the respondents' right to use this desirable section of the park area is denied.

"The area * * * is to be used as a public park and for concession type commercial units. * * *" We construe this to mean that the entire platted "Park and Commercial Area" is for public park use. Any use which denies or impairs the use and enjoyment of the "Area" as a public park is not permitted. Allowable "concession type commercial units" should neither deny nor impair park use but should enhance it.[5] Under the facts before us, it is sufficient to hold that appellants' projected use of the "Park and Commercial Area" violates the Declarations which are a part of the plat. We overrule appellants' contention that the "Park and Commercial Area" restrictive covenant is ambiguous, in the context considered here, because we conclude the language of the Declarations is not reasonably capable of being understood to permit appellants' projected use of the Park and Commercial Area.

The Declarations drafted by appellants are captioned: "Declarations of Restrictions and Covenants to *Run with the Land*" (emphasis ours). Accordingly, they are binding on appellants and may be enforced by respondents. SDCL 43–12–1.[6]

The judgment is therefore affirmed.

All the Justices concur.

Appendix A to follow.

5. Compare *City of Detroit v. Tygard,* 381 Mich. 271, 161 N.W.2d 1 (1968); *Collier v. Akins,* 102 Ga.App. 274, 116 S.E.2d 121 (1960).

6. SDCL 43–12–1:
"Certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor, and to vest in the assigns of the covenantee, in the same manner as if they had personally entered into them. Such covenants are said to run with the land."

## APPENDIX A

RIVERSIDE ACRES
A SUB-DIVISION OF
PARCEL 'A' of GOV. LOT '1' Sec 22-T93-R.56 AND
PARCEL 'B' of NW.1/4 Sec 27-T.93-R 56 AS FILED IN
Book 54, Page 478 YANKTON COUNTY REGISTER-OF-DEEDS OFFICE
WAYNE ST.
RICHARD ST.
JERRY ST.
CASE ST.
COTTONWOOD ST.
PIKE ST.
FOX AVE.
OKER BLVD.
PARK & COMMERCIAL AREA
MISSOURI RIVER
Easement see NOTE 1
JUN 11 1963

APPENDIX B

DECLARATIONS OF RESTRICTIONS AND COVENANTS TO RUN WITH THE LAND

TO WHOM IT MAY CONCERN:

We, Earl D. Case and Sharlotte E. Case, fee owners of the above described real property, duly platted herein above and now known as RIVERSIDE ACRES, * * * do hereby make the following declarations as to limitations, restrictions and uses to which the lots constituting said Riverside Acres may be put, and hereby specify that said declarations shall constitute covenants to run with all of the lands contained in the heretofore described Riverside Acres as provided by law, and shall be binding on all parties and all persons claiming under them, and for the benefit of and limitations upon all future owners in said Riverside Acres, the declaration of restrictions being designed for the purpose of keeping said Riverside Acres desirable and suitable in architectural design and use as hereinafter specified:

1. DURATION: Said covenants, conditions, restrictions and reservations shall be perpetual and shall apply to and be forever binding upon the grantee, his heirs, executors, administrator and assigns, and are imposed upon said realty as an obligation or charge against the same for the benefit of the grantor herein named, their successors and assigns; and as a general plan for the benefit of said tract.

THE FOLLOWING COVENANTS AND RESTRICTIONS APPLY ONLY TO BLOCKS 1, 2, 3 AND 4

1. PURPOSE: Nothing but a single private dwelling of residence designed for the occupance of one family, shall be erected on any lot in this subdivision, nor shall said premises be used for any purpose other than residential purposes. No more than one residence shall be erected or constructed upon any one lot shown upon the herein attached plat of Riverside Acres, and the subdivision of any lot in said plat is hereby prohibited.

2. CONSTRUCTUAL LIMITATIONS: No structure shall be erected, constructed or placed upon said tract which shall exceed in height 18 feet above the present ground elevation, TV antenna nonexclusive. It is hereby excepted that no provision herein shall preclude the erection and construction of a one story building designed and used exclusively for private garage purposes as well as other customary or necessary structures accessory to a residential dwelling and its use; however limited in its constructed height as heretofore mentioned. No structure of any kind shall be located on any lot less than 15 feet from any lot line of said plat or 20 feet from any road or street right-of-way in said plat. There shall not be erected on any lot any residence which shall have a ground floor space of less than 1000 square feet. One half of garage floor area, but no more than 300 square feet, may be counted into the required square footage area required to comply with the minimum of 1000 square feet.

3. EASEMENTS: An easement of 15 feet is hereby dedicated from and reserved herein upon each lot and along all lot lines for utilities, their construction, erection and maintenance.

4. GENERAL RESTRICTIONS: (A) No trailer, basement, tent, shack, garage or other outbuilding shall at any time be used as a residence, either temporarily or permanently, nor shall any other structure of temporary character be used as a residence. No existing structure shall be moved in and placed upon said premises.

(B) No noxious or offensive trade or activity shall be carried on upon any lot within said plat, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood. Nor shall any of the premises or buildings erected thereon be used at any time for the purpose of any trade, business or manufacture.

(C) No animals, livestock or poultry of any kind shall be raised, bred or kept on any lot, except that dogs, cats or household pets may be kept, providing that they are not kept, bred or maintained for commercial purposes.

(D) No lot shall be used or maintained as a dumping ground for rubbish. Trash, garbage and other waste shall be kept in sanitary containers and all incinerators or other equipment for the storage or disposal of such material shall be kept in a clean and sanitary condition.

THE FOLLOWING COVENANTS AND RESTRICTIONS APPLY ONLY TO BLOCK 4

1. Block 4 shall be designated as an area for mobile homes or house trailers. Space in said Block 4 may be either rented or purchased for the purpose of placing in such space a mobile home or house trailer.

THE FOLLOWING COVENANTS AND RESTRICTIONS APPLY ONLY TO BLOCK 5

1. Block 5 is to be reserved for construction and rental of cabins and/or motor courts.

### THE FOLLOWING COVENANTS AND RESTRICTIONS APPLY ONLY TO
### THE PARK AND COMMERCIAL AREA

1. The area designated as Park and Commercial Area is to be used as a public park and for concession type commercial units. Space for said commercial units to be subject to either lease or sale.

### THE FOLLOWING COVENANTS AND RESTRICTIONS APPLY TO
### RIVERSIDE ACRES IN ITS ENTIRETY

PENALTIES FOR BREACH: Any person, his heirs, representatives or assigns, acquiring right, title or interest in and to any portion of the said Riverside Acres, who shall violate any of the covenants herein set out shall be subject to prosecution at law or in equity by any other person owning real property in said tract for the recovery of damages or for the enjoinment of said violator from further violations of said covenants.

EFFECT OF PARTIAL INVALIDITY: In the event any covenant or restriction hereinabove contained, or any portion thereof, is invalid or void, such invalidity or voidness shall in no way affect any other covenant, condition or restriction.

FUTURE CONVEYANCES: Any and all transfers of title by deed or otherwise, or of possession by lease or otherwise, shall be subject to the provisions of the protective convenants herein contained.

---

[Owner's Certificate and Dedication, Surveyor's Certificate, and various official approval certificates are omitted].