W. Donald DUBAIL et al.,
Plaintiffs-Appellants,

v.

GREEN TRAILS PLAZA, INC.,
Defendant-Respondent.

No. 39825.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 11, 1979.

935

Gunn & Gunn, P. C., James F. Gunn, Patrick R. Gunn, Sharon Wice, Creve Coeur, for plaintiffs-appellants.

Schramm, Pines & Marshall, Paul H. Schramm, M. Harvey Pines, Clayton, for defendant-respondent.

KELLY, Judge.

In this appeal from a judgment of the Circuit Court of St. Louis County, the appellants, (plaintiffs in the trial court) Donald Dubail, Phillip Newmark and Ned English, as the Trustees of Ladue Trail Subdivision, instituted this cause of action for the purpose of obtaining an injunction restraining the respondent, Green Trails Plaza, Inc.,[1] from constructing a proposed medical office complex on Lot 7, Plat 2 of the subdivision.[2] The respondent filed a counterclaim for declaratory judgment adjudicating the respective rights and duties of the parties under the terms of a Sub-Indenture of Deed Restrictions of Ladue Trails Subdivision, Plat No. 1 and Lot 7, Plat 2. The trial court entered judgment against the appellants, denying the injunction sought in their petition, and in favor of the defendant on its counterclaim. The judgment declared that defendant is authorized and permitted to continue to develop Lot 7 for professional medical services in accordance with the amended Final Development Plan for said Lot as recorded in Plat Book 161, pages 72 and 73 of the St. Louis County records, or for any other commercial purpose not inconsistent with the terms of the Sub-Indenture.

We affirm.

Green Trails Plaza, Inc., owns Lot 7 of Plat 2 of Ladue Trails Subdivision. There are seven lots in Plat 2 of this subdivision and Lots 1 through 6 are improved with a development known as the Green Trails Country Club, consisting of a golf course, swimming pool, tennis courts, a clubhouse, snack bar, and golf pro shop. Lot 7 is bordered by that part of Lot 6 being used as the golf course, by common lands of the Village of Green Trails,[3] Ladue Road, and Lot 271 of Trails West Subdivison. Lot 7 has been zoned C–8 (planned commercial) since 1966, and Lots 270 and 271 of Trails West Subdivision are also zoned C–8. Lot 270 contains a number of commercial enterprises, including a filling station. There are 8 Plats of Ladue Trails Subdivision and Lot 7 is separated from the lots in Plat 1 and Plats 3–8 by Ladue Road. Ladue Road is a dedicated roadway 60 feet wide. None of

---

1. Robert Hagel, the Director of Public Works for St. Louis County was a named defendant. He filed a motion to dismiss prior to trial and it was sustained.

2. "Lot 7," as hereinafter used, refers to Lot 7 of Plat 2 of Ladue Trails Subdivision.

3. The Village of Green Trails is not a municipality incorporated pursuant to § 80.020 RSMo. 1969 but at all times relevant to the issues in this proceeding was an unincorporated section of privately owned real estate parcels, lots and common grounds within St. Louis County.

the lots in Plat 1 exceed two acres in size; all of the lots in Plat 2, including Lot 7, exceed two acres.

All of the lots in the Village of Green Trails, including Lot 7 are governed by an Indenture of Restrictions which provides in part:

Whereas, the Owners have caused Metron Inc. to design a Master Plan for the development of the Village in accordance with the program of the Owners, and

.    .    .    .    .

Whereas, the Owners are agreed to subject their individual properties which comprise the Village to the terms of this Indenture in order to fulfill and accomplish the purposes of the aforesaid Order and Master Plan, as the same is now in force and effect or may hereafter be amended; and

.    .    .    .    .

Each Sub-Indenture shall contain appropriate provisions for the Park Trustees to assess each lot in a subdivision not more than $50.00 per improved residential lot and not more that $10.00 per unimproved residential lot per annum; on multi-family lots the assessment shall be computed at not more than $25.00 for each separate apartment authorized and built and not more than $10.00 for each separate apartment authorized and not built (the term "apartment" as used herein shall mean a single dwelling unit per family); on lots which are zoned or developed commercial or institutional (including a bath and tennis club, if any), the assessment shall be not more than $200.00 per lot; on "estate lots" (i. e. lots of 2 acres or more in size) the assessment shall not be more than $50.00 per annum; on the estate lot area which is developed as a resort lodge (if any), the assessment shall not be more than $400.00 per annum, if built.

A Sub-Indenture of Deed Restrictions, that of Ladue Trails Subdivision, also applies to all of the lots in said subdivision, including Lot 7. This Sub-Indenture is identified as Sub-Indenture of Deed of Restrictions of Ladue Trails Subdivision for

Plat I. The appellants derive their powers from this latter Sub-Indenture, which provides in part:

"WHEREAS, it is the purpose and intention of this Sub-Indenture to preserve the remainder of said tract of land, not including the "Common Land," as a restricted neighborhood and to protect the same against certain uses by the adoption of a common neighborhood plan and scheme of restrictions, and to apply that plan and restriction not only to all of said land and every parcel, but also in favor of or against said parcel as against or in favor of all other parcels within said residential area in the hands of the present or subsequent owners thereof, and mutually to benefit, guard and restrict present or future title holders or occupants of any or all of said parcels and to foster the health, welfare, safety and morals of all who own or reside in said area.

.    .    .    .    .

(The trustees have the right) to consider, approve or reject any and all plans and specifications for any and all buildings or structures, fences, detached building, swimming pools or tennis courts proposed for construction and erection on said lots   .    .    .

.    .    .    .    .

Lots of two acres or less in residential subdivisions platted of record may only be improved with houses for residential purposes.   Such residential structures may not be used for commercial purposes, and shall otherwise comply in all respects with the applicable zoning ordinance.

.    .    .    .    .

No nuisances or noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood.   No saloon, tavern, filling station or other commercial business may be conducted on said property.   No building or premises shall be used for purposes prohibited by law or ordinance, and nothing shall be done which may be or hereafter become a nuisance to the owners of said lots.

.    .    .    .    .

No sign of any kind shall be displayed to the public view on any lot except one professional sign of not more than five square feet advertising the property for sale or rent, or signs used by a building to advertise the property during the construction and sale period.

. . . . .

. . . On lots which are zoned or developed commercial or institutional (including a bath and tennis club, if any), the assessment shall be not more than $200.00 per lot.

This litigation is an attempt to resolve whether all forms of commercial development on lots in the Ladue Trails Subdivision is prohibited by the language in the Sub-Indenture of Deed Restrictions of Ladue Trails Subdivision that "No saloon, tavern, filling station or other commercial business may be conducted on said property."

The evidence showed that a former owner of Lot No. 7 had submitted plans for commercial development of the property to the Trustees for approval. The Trustees, in a letter on Trustee stationery and over the signature of Mr. Newmark as Chairman of the Trustees, notified the applicant that the plans were rejected for the reason that the site and grade plan information had not been supplied with the application. The letter also contained this sentence: "We certainly would not want you to construe this letter as any opposition to the commercial development of the area." According to the letter, copies went to the two other trustees, Mr. Dubail and Mr. R. C. Hellwig.

Five months later, Mr. Dubail, by letter, informed the same owner that the Sub-Indenture prohibited all forms of commercial development on the lot. This letter too was on Trustees' stationery.

In 1974, the owners of all of the lots in Plat 2 signed an agreement to terminate the application of the Sub-Indenture of Deed of Restrictions to Ladue Trails Subdivision Plat 2, demonstrating that the owners of the lots in Plat 2 have no objection to the commercial development of Lot 7. According to the terms of the Sub-Indenture it can be amended or discontinued by a written agreement signed by the "record owners of the fee simple of ⅔ of the lots in the subdivision then included under the terms of (the) indenture;" when sufficient signatures have been obtained, the Trustees are required to certify and acknowledge the written agreement discontinuing any of the restrictions contained therein.[4] When the agreement is recorded in the office of the Recorder of Deeds of St. Louis County the discontinuance becomes effective.

The Trustees did not certify and acknowledge the written agreement discontinuing the restriction aforesaid. On April 12, 1976, ten months after the institution of this cause of action on June 10, 1975, they filed an affidavit in the Recorder of Deeds office of St. Louis County, renouncing the owners' written agreement.

With respect to the operation of the golf course and its facilities as a business open to the public, the only Trustee who testified in person at trial, was Mr. Dubail, who had been a Trustee for approximately 8 years. He denied any knowledge that the golf course and facilities used in connection therewith were open to the public or were operated for profit; rather, he testified that he had stopped any commercial operations on Lots 1 through 6, Plat 2 of Ladue Trails Subdivision whenever he became aware of such activities. He cited three instances where, as a Trustee, he took action to stop commercial activities in the subdivision, all in relation to the clubhouse located on Lot 1, Plat 2 of the subdivision. The first of these was when a Mr. Olfe attempted to obtain a liquor license for the operation of a bar in the clubhouse. The Trustees engaged the law firm representing

4. There is a further provision in the Indenture that any such amendment, alteration, change or discontinuance required the consent of the "Party of the First Part, or its successors or assigns so long as it is the owner of more than two lots in said Subdivision." The "Party of the First Part" is Forest Ridge Land Corp., a Missouri corporation, and there is no evidence in the record as to whether, at the time this consent was obtained, Forest Ridge Land Corp. owned any of the lots in the subdivision.

them in this case to appear before the St. Louis County Council to oppose the issuance of a liquor license to Mr. Olfe. No license was granted to Mr. Olfe and the bar did not operate under his ownership. The second instance involved "The Golden Door," an activity which was to be operated in the clubhouse; the Trustees authorized their attorneys to take action and oppose it. A third activity successfully opposed by the Trustees which would have used the clubhouse for commercial activities was the D.F.&L. Caterers. The Trustees also sent a letter to Mr. Raisher opposing the operation of a seminar by the A. G. Edwards Company in the clubhouse on Lot 1 of Plat 2 of Ladue Trails Subdivision.[5] According to Mr. Dubail, a "commercial activity" is one conducted for profit.

The respondent produced three witnesses and read into the record, as an admission against interest, portions of the deposition of Mr. Phillip Newmark, the Chairman of the Trustees of the Subdivision.

Respondent's first witness, Frank Raisher, is the president of the L and R Development Corporation, the owner of Lot 1 of Ladue Trails Plat 2, and vice-president of the Ladue Land Corporation, owner of Lots 2 through 6 of Plat 2 of the subdivision. Ladue Land Corporation is incorporated under the Missouri for-profit corporation laws. He was also one of the developers of Ladue Trails Subdivision and he was involved in the sale of lots in Ladue Trails Subdivision, Plat 1, when it was in the development stage. He identified Exhibit A to the Stipulation of Facts as a copy of a plan under which the Village of Green Trails was built, including Plat 2 of Ladue Trails Subdivision. According to this plan Lot 7 was designated commercial, "proposed neighborhood shopping."

According to his testimony, the clubhouse, a swimming pool, and two tennis courts occupy Lot 1 of Plat 2 of the Ladue Trails Subdivision. L & R Development

Corporation acquired Lot 1 in November, 1975, from Mr. Olfe and continued the operation of the previous owner, leasing the premises for private parties, weddings, and similar functions. He is the manager of the clubhouse, which contains some 14,000 square feet. There is a snack bar in the ground level of the clubhouse which is open to the public. Hamburgers and hot dogs may be purchased there, and it is patronized by those persons using the facilities or anybody who comes onto the premises to make a purchase in the snack bar. There is also a pro shop in the clubhouse which is operated by the golf pro, Ken Sample, who has the concession for the merchandise sold there. Mr. Sample collects the greens fees and cart fees. The pro shop is open to the public.

The tennis courts and the swimming pool are open to the public; their use is not restricted to persons who own lots or homes in the subdivision. A family membership costs $185.00 and guests may enjoy swimming pool privileges for $2.00 per guest. The pool is available to the public and to those who are holders of a membership, between Decoration Day and Labor Day. The tennis courts are open whenever the weather permits. The entire operation is geared towards realizing a profit.

Mr. Raisher testified that the owner of the golf course is the Ladue Land Corporation. The course is located on Lots 2 through 6 of Plat 2 of the Ladue Trails Subdivision and consists of 9 holes. The corporation has a "permit" for the operation of a gold course. The golf course was built in 1965 or 1966, and has been in operation for approximately 11 years. It has always been operated as a public golf course and its use has never been restricted to those persons who own lots or homes in either Ladue Trails Subdivision or the Village of Green Trails. "Anyone who had the greens fee can come and play." The facilities and the availability of memberships

5. The record is not clear concerning the nature of these activities which the Trustees opposed. There is no explanation as to what type of business the "Golden Door" was, nor what the caterer intended to operate in the clubhouse.

We would have to assume that the seminar to be conducted in the clubhouse space rented to A. G. Edwards Investment Company would be in connection with its business.

have been advertised in the news media of the St. Louis Metropolitan area for a number of years. An annual membership is sold for $200.00, entitling one to unlimited play without payment of greens fees. With the payment of an additional $90.00 per year, an individual may also obtain for a wife or child under age 21, the same privileges which attach to the annual membership.[6] He personally knows that Mr. Newmark, one of the plaintiffs in this suit and a member of the Trustees, played the golf course and paid greens fees for the privilege.

Regarding the letter Mr. Dubail sent concerning the A. G. Edwards Investment Seminar, Mr. Raisher testified that he had rented some space in the clubhouse to A. G. Edwards & Company for a meeting. He had received the letter from the Trustees signed by Mr. Dubail, advising him that this use of the property was in violation of the Sub-Indenture, "the other day during the course of this trial here." This was the first letter the Trustees had ever sent to him in the ten years he had been managing the business.

The next witness offered by the respondent at trial was Michael M. Levinson who testified that he was an officer of the corporation owning Lots 1 through 6 of Plat 2 of the Ladue Trails Subdivision and that his testimony with respect to the use of Lots 1 through 6 would be "substantially" the same as that given by Mr. Raisher. He too handled the sale of some of the lots in Ladue Trails Subdivision during the course of its development. During that period he talked with both Mr. Dubail and Mr. Newmark while they were negotiating the purchase of homes in the subdivision. At the time Mr. Dubail was negotiating the purchase of his home the country club and golf course were both in operation. He also communicated to Mr. Dubail the fact that Lot 7 was for commercial development, and that Lots 1 through 6 were being operated as a golf course, a country club, and as a

profit making venture. He and Mr. Raisher appointed Mr. Dubail a Trustee for the subdivision. He had similar discussions with Mr. Newmark prior to the time Mr. Newmark bought into the subdivision. Up until the time Mr. Newmark joined Meadowbrook Country Club, according to Mr. Levinson, he used the Green Trails County Club facilities "tremendously" and was a very active participant in all of the activities of the Club.

Ken Sample, the golf pro at the Green Trails Country Club, testified that he was employed as the golf professional at the Country Club and in connection with his occupation operated a "specialty shop" selling golf balls, golf clubs and all kinds of golf accessories. He said his shop was open to the public and that his customers were made up of residents of homes and apartments in Green Trails as well as others who were non-residents. He has the concession for the pro shop merchandise and carries a $6000.00 inventory in golf equipment. He operates his business for profit. He also gives golf lessons for a fee and does not restrict this service to those who are residents of the subdivision; he gives lessons to anyone, regardless of where the person lives. He conducts this business under contract with Mr. Raisher and Mr. Levinson. He operates the golf course, collects the greens fees and dispenses the electric gold carts. He does not own the golf carts; the greens fees belong to his employers. He has no other employment.

Those portions of the deposition of Mr. Newmark read into evidence concerned his knowledge that the golf course and clubhouse operation on Lots 1 through 6 of the subdivision were open to the public for a fee. He acknowledged, in the deposition, that he knew the tennis courts, the swimming pool and the golf club could be used by a member of the public who purchased a membership in the Club even though that person was not a resident of the Village.

___

6. There is no evidence concerning the greens fees paid by an individual, not a member of the country club, who desired to play a round of golf on the golf course nor what was the cost of a cart rental to either a member or non-member of the country club.

The respondent introduced the tax records of the Village of Green Trails which showed that the owner of Lot 7 paid a $200.00 tax assessment for the years 1970 through 1976, and that an assessment of $200.00 had been levied on Lot 7 for 1977. The 1977 assessment, which becomes due annually in April, had not been paid as yet. According to the Joint Stipulation of Facts the appellants had levied an assessment against the same property of $25.00 per year for the years 1969 through 1976, and each of these assessments had been paid by the owners of Lot 7.

At the conclusion of respondent's evidence Mr. Dubail was called to the stand in rebuttal; he testified that the assessments for Lots 1 through 6 of Plat 2 of Ladue Trails Subdivision had been paid through 1975. He denied that Mr. Levinson had discussed with him the commercial nature of Lot 7 at any time prior to the purchase of his home or prior to his appointment as a Trustee of the Subdivision.

On appeal, the appellants present four Points Relied On as grounds for reversing the judgment of the trial court, and pray for an order of this court permanently enjoining the respondent from continuing construction of a commercial development on Lot 7, or in the alternative, for an order remanding the cause to the Circuit Court of St. Louis County for further proceedings.

Appellants' First Point Relied On is that the trial court erred in its conclusion that the Sub-Indenture of Deed Restrictions of Plat 1 of Ladue Trails Subdivision, as it extends to Plat 2 thereof, does not restrict all types of commercial development in said Subdivision because the trial court's conclusion (a) was founded upon evidence improperly admitted in violation of the parol evidence rule, and (b) is clearly contrary to the evidence.

■ With respect to the first sub-point— i. e., the admission of improper evidence in violation of the parol evidence rule—nothing is preserved for review. Appellant has failed to set out in this Point Relied On what evidence it is that was admitted in violation of the parol evidence rule. *Thum-*

*mel v. King,* 570 S.W.2d 679, (Mo. banc 1978); Rule 84.04(d).

The second sub-point of Point I, as we gather from reading the Argument portion of appellants' brief, revolves around the issue of whether the trial court's conclusion is contrary to the evidence because the Sub-Indenture Deed of Restrictions of Ladue Trails Subdivision expressly prohibits all types of commercial development in the Subdivision.

The thrust of appellants' argument in its brief as well as in oral argument before this court is that the Sub-Indenture Deed of Restrictions is clear and unambiguous and therefore the trial court could not employ evidence to explain an ambiguity in deciding whether Lot 7 might be developed commercially. The particular paragraph appellants refer to is found in Article VI, Paragraph 6 of the Sub-Indenture:

No nuisances or noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood. *No saloon, tavern, filling station or other commercial business may be conducted on said property.* No building or premises shall be used for purposes prohibited by law or ordinance, and nothing shall be done which may be or hereafter become a nuisance to the owners of lots. (Emphasis supplied).

■ As we have previously concluded, t. question of whether extrinsic evidence was admissible has not been preserved for review by reason of the failure of the appellants to comply with the dictates of Rule 84.04(d). Therefore, in deciding whether the conclusion that Lot 7 might be developed for professional medical offices is supported by the evidence in the case we must view the evidence in its totality, including that evidence which appellants contend should not have been admitted.

■ Our review of non-jury cases is controlled by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976) and the decree or judgment of the trial court will be sustained

unless there is no substantial evidence to support it, unless it erroneously declares the law, or unless it erroneously applies the law; and our power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" must be exercised with caution and with a firm belief that the decree or judgment is wrong. We conclude that the judgment of the trial court is not wrong.

It is clear from the evidence that Plat 2 of Ladue Trails Subdivision is governed by the Indenture of Restrictions of the Village of Green Trails, and this Indenture does not contain any language expressly prohibiting commercial development of the lots in the Village. Other subdivisions in the Village governed by the Indenture, notably Trails West Subdivision, contain lots which have been developed commercially. This Indenture also provides for vote allocation to "non-residential" lots in the Village, and for an assessment of lots "zoned or developed commercial." The assessment for residential lots is $50.00, and for lots zoned or developed commercial, $200.00. The Indenture provides that the Village be developed in accord with a Master Plan and that the owners of property in the Village agree to conform their ownership to the terms of the Indenture in order to fulfill the purposes of the Master Plan. According to the Master Plan, Lot 7 is marked for development as a shopping center.

Plat 2 of Ladue Trails Subdivision is also governed by the Sub-Indenture to Plat 1 of Ladue Trails Subdivision. This Sub-Indenture provides:

> Lots of two acres or less in residential subdivisions platted of record may only be improved with houses for residential purposes. Such residential structures may not be used for commercial purposes, and shall otherwise comply in all respects with the applicable zoning ordinance.

All of the Lots in Plat 2, including Lot 7, are platted in excess of two acres; those in Plat 1 are two acres or less.

Although the "Whereas" clause of the Sub-Indenture, supra, refers to the area as a "residential area" and a "restricted neighborhood," it does not contain any express restrictions. Restrictions against the commercial development of property, if they exist, must be found in other parts of this Sub-Indenture.

The only specific restriction in the Sub-Indenture on the commercial development of lots is that found in Article VI, Paragraph 6, supra. It is this paragraph respondent contends is ambiguous. The particular words so labeled are "other commercial business." In a narrow sense, the term "commercial" includes only those enterprises engaged in buying and selling of goods and services. The term has been held to mean "a place where commodities are exchanged, bought or sold." *State ex rel. Kansas City Power & Light Co. v. Smith*, 342 Mo. 75, 111 S.W.2d 513, 515 (banc 1938). In its broad sense, however, it has been held to comprehend all businesses. *Reiser v. Meyer*, 323 S.W.2d 514, 521 (Mo.App.1959).[7]

However, in the context of Article VI, Paragraph 6 of the Sub-Indenture, the words "or other commercial business" do not stand alone; rather, they may be considered part of a class of businesses described by the preceding terms, ". . . saloon, tavern, filling station . . . ;" to ascertain their meaning the rule of ejusdem generis may be employed. Had the Sub-Indenture meant to prohibit all commercial activity it could have so stated and no mention of specific commercial uses like "saloon, tavern, filling station . . ." would have been necessary. The common thread running through the businesses specifically named is that they may constitute "nuisances or noxious or offensive activit(ies)" if not conducted carefully and in

---

7. For other cases construing the term, see *Thompson v. City of Salisbury*, 24 N.C.App. 616, 211 S.E.2d 856, 858[3] (1975); *Jefferson Parish v. Groetsch*, 256 So.2d 722, 724[1] (La. App.1972); *Shady Grove Inc. v. Jefferson Parish*, 203 So.2d 869, 870 (La.App.1967); *Appeal of Hart*, 410 Pa. 439, 189 A.2d 167 (1963); *Lanske v. Montealegre*, 361 Mich. 44, 104 N.W.2d 772, 774 (1960); Annot. 32 A.L.R.3d 420 (1970); *City of Sioux Falls v. Cleveland*, 75 S.D. 548, 70 N.W.2d 62, 64 (1955).

good taste. The entire paragraph in which these classifications appear is directed against nuisances or noxious or offensive activity and businesses which, by their very nature, may constitute a nuisance or a noxious or offensive activity. There is no evidence in this record that the commercial use sought to be restrained in this case fits into that category of commercial development.

█ The conduct of those affected by the Sub-Indenture leads to the same conclusion. The owners of all of the other lots in Plat 2 have no objection to the commercial development of Lot 7. A prior owner planned the development of this lot for commercial purposes and although his plans were thwarted by the Trustees the reason given was not the fact that a commercial development was planned. Confusion prevailed among the Trustees as to whether this lot could be developed commercially. Mr. Newmark, the Chairman of the Trustees, in denying an application to develop the lot commercially, stated "We (the Trustees) certainly would not want you to construe this letter (of rejection of the plans for commercial development) as any opposition to the commercial development of the area." We conclude that there is substantial evidence supporting the judgment of the trial court and rule this Point against the appellants.

Appellants' second Point Relied On is that the trial court erred in reaching the conclusion that to enjoin commercial development of Lot 7 would deny respondent equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution.

It is not necessary that we decide whether the trial court erred in its finding that respondent's equal protection rights were violated. The trial court's judgment can be sustained on the grounds that the Sub-Indenture Deed Restriction is inapplicable to the construction of a medical office complex on Lot 7 as we have hereinabove held.

Appellants' Third Point Relied On—that the trial court erred in overruling their objection to the use of portions of the deposition of Phillip R. Newmark—is likewise without merit.

Mr. Newmark is a named party-plaintiff in this litigation and a member of the Trustees of the Ladue Trails Subdivision seeking an injunction to enforce the restrictions in the Sub-Indenture on Lot 7. One of the issues was whether the Trustees knew of the commercial operations being conducted on Lots 1–6 of Plat 2 of the Subdivision. Those portions of his deposition read into evidence were offered for the purpose of showing his knowledge of these activities and the failure of the Trustees to enjoin those uses.

█ In Missouri the use of depositions at trial is authorized by Rule 57.07(a). A distinction is made between the deposition of a party to the litigation and the deposition of a non-party witness. In the case of a party, or of anyone who at the time of the taking of the deposition was an officer or managing agent, or a person designated under Rule 57.03(b)(4) or 57.04(a) to testify on behalf of a public or private corporation, partnership, or association or governmental agency which is a party, his deposition may be used by an adverse party for any purpose. Where the deposition is that of a non-party witness and said witness is not present in court, then the provisions of Rule 57.07(a)(3) control, and the party wishing to use the deposition must satisfy the trial court that the deposition is admissible by reason of one of the five grounds set out therein.

At trial appellants objected to the use of Mr. Newmark's deposition on the grounds that Mr. Newmark was available and could have been subpoenaed and the respondent had shown no reason why Mr. Newmark could not have been brought in. Appellants' objections are directed to Rule 57.-07(a)(3) and the use of a non-party witness' deposition. Respondent's counsel retorted that he was using the deposition as admissions against interest because the deponent was a party plaintiff. The trial court overruled the objection stating ". . . he's a plaintiff in a representative capacity, this testimony is given by him individually." In

this court the appellants argued that Mr. Newmark was deposed as both a party and as a witness, and that some information obtained from him was that which he garnered in his individual capacity and some in his capacity as a representative of his fellow Trustees. From this appellants argue that Mr. Newmark's knowledge of the commercial activities conducted on Lots 1 through 6 of Plat 2 of Ladue Trails Subdivision was knowledge gained as an individual golfer, and it was not admissible as knowledge acquired by him in his capacity as a Trustee. Appellants argue:

> Appellants are firmly convinced that counsel for the Respondent, while taking Mr. Newmark's deposition, asked him to step aside from his position as Trustee and answer certain questions in his capacity as a golfer and user of the facilities. After getting that information from him as an individual witness to the occurrences on Lots 1 through 6, counsel for the respondent then asked Mr. Newmark to again step into his shoes as a Trustee and to answer a series of questions concerning whether or not any of the elements of the use of Lots 1 through 6 were prohibited by the Sub-Indenture, of which he would have particular knowledge as a Trustee.

No authority is cited to support this argument nor is there any portion of the deposition in this record which might support an argument on these grounds. We refuse to make the distinction between knowledge acquired by a trustee concerning the commercial activities conducted on Lots 1 through 6 of Plat 2 in his individual capacity and that acquired by him in his representative capacity.[8]

We hold that those portions of Mr. Newmark's deposition which the respondent read into evidence as admissions against interest were properly admitted pursuant to the provisions of Rule 57.07(a)(2) for any purpose.

Appellants' final Point Relied On is that the trial court erred in overruling their objection to the introduction into evidence of Exhibit A–2 to the Joint Stipulation of Facts because said Exhibit was (1) immaterial and irrelevant, and (2) violated the parol evidence rule in that it dealt with the proposed use of certain land in the Village of Green Trails and did not deal with the actual use of the land nor with the subsequently adopted Sub-Indenture of Deed Restrictions for Ladue Trails Subdivision.

Exhibit A–2 is a plan of the Village of Green Trails filed as a part of the Joint Stipulation of Facts prior to trial and identified therein as the Master Plan for the development of the Village of Green Trails. The Joint Stipulation of Facts commenced:

> Comes now Plaintiffs and Defendants and herewith submit the following Stipulation of Facts, including all Exhibits attached hereto in this cause for judgment on the issues raised by the pleadings and motions between them. *Any objections stated herein goes (sic) solely to relevancy and materiality, and if said objection is sustained, the stipulated fact shall be taken as an offer of proof which the Court has rejected, to which the offeror has taken exception. All recorded documents shall be considered as stipulated evidence just as the exhibits attached hereto.* (Emphasis supplied).

No objections are stated *in* the Joint Stipulation of Facts as it appears in the record in this court. At trial, during the direct examination of Mr. Raisher in respondent's case, Mr. Raisher was asked to testify to what use Lot 7 was assigned on the Master Plan. Appellants' trial counsel objected on the grounds that to permit Mr. Raisher to answer the question would constitute a violation of the parol evidence rule; there was no objection made to the evidence at trial on the grounds that it was immaterial or

---

8. The duty of a trustee in administering a trust is to exercise such care and skill as a person of ordinary prudence would exercise in dealing with his own property. Restatement (Second) of Trusts § 174 (1959). When dealing with his own property, a person of ordinary prudence considers all relevant information in his possession, regardless of whether he obtained the information in a personal or a business capacity. The trustee's duty of care is no less than the individual's.

irrelevant. This objection as stated was overruled and Mr. Raisher was permitted to testify that the designated use of Lot 7, Plat 2 of the Ladue Trails Subdivision as shown on Exhibit A–2, the Master Plan for the Village of Green Trails, was commercial, "proposed neighborhood shopping."

On cross-examination Mr. Raisher testified that Exhibit A–2 was a proposed plat, and that a final plat would be recorded. A final development plat for Lot 7 was recorded in the St. Louis County Records and recited that all lots in the subdivision—Plat 2 of Ladue Trails Section of the Village of Green Trails—were subject to the conditions and restrictions contained in the Indenture of Deed Restrictions of Ladue Trails Section of the Village of Green Trails Plat One.

We have previously held that the Sub-Indenture Deed Restriction did not prohibit all commercial development of Lot 7 and that the words "or other commercial business" in the context of the Sub-Indenture Deed of Restrictions was employed in a limited sense inapplicable to the proposed medical office complex. We seriously question whether the parol evidence rule applies to this case under any circumstance;[9] but if it should, we conclude that because the Master Plan, Exhibit A–2, was incorporated by reference into the Village Indenture governing Lot No. 7, it became a part of that document and could be considered by the trial court in determining whether the document itself was ambiguous.

We rule this point against appellants.

Affirmed.

STEPHAN, P. J., concurs.

STEWART, J., concurs in the result.

---

9. See A. Corbin, Contracts §§ 573–596 (1 Vol. Ed. 1952).